**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 31 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

Plaintiff-Appellant,

v.

HORIZON/CMS HEALTHCARE
CORPORATION,

Defendant-Appellee.

No. 98-2328

---

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-97-362-RLP)

---

Lisa J. Banks, Associate General Counsel, (C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, and Robert J. Gregory, Senior Attorney, Equal Employment Opportunity Commission, Washington, D.C., on the briefs), for Appellant.

Dean E. Westman, of Millisor & Nobil Co., L.P.A., Cleveland, Ohio, (Jim M. Dines and Cindy Lovato-Farmer, of Dines, Gross & Esquivel, P.C., Albuquerque, New Mexico, with him on the brief), for Appellee.

---

Before **MURPHY** and **HOLLOWAY,** Circuit Judges, and **COOK,**[*] Senior District Judge.

_____

**MURPHY**, Circuit Judge.

_____

Plaintiff-Appellant, the Equal Employment Opportunity Commission (the "Commission"), brought a public enforcement action against Defendant, Horizon/CMS Healthcare Corporation. Seeking relief for four charging parties (the "Charging Parties") under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k), the Commission filed a complaint with the United States District Court for the District of New Mexico alleging Defendant had unlawfully denied the Charging Parties and a group of similarly-situated pregnant employees the opportunity to work modified duty when they became temporarily unable to perform heavy lifting due to their pregnancies. Defendant purportedly based its decision on a company policy allowing modified duty only for those employees injured on the job.

The district court granted Defendant's motion for summary judgment on the Commission's claim of disparate treatment. The summary judgment was premised on the Commission's twofold failure to establish a prima facie case of intentional discrimination: (1) the Charging Parties' lack of qualification for modified duty

---

[*]Honorable H. Dale Cook, Senior District Judge, United States District Court for the Northern District of Oklahoma, sitting by designation.

because they were not injured on the job; and (2) the absence of evidence the Charging Parties were treated less favorably than non-pregnant but otherwise similarly situated-employees.

The matter is before this court only on the Commission's appeal of the grant of summary judgment in favor of Defendant on the disparate treatment claim. Exercising jurisdiction pursuant to 28 U.S.C. §§ 1291, 636(c)(3),[1] we **reverse** the grant of summary judgment and **remand**.

## I.  BACKGROUND

### A.  Facts

The following facts are undisputed or, because the Commission is the party opposing summary judgment, construed in the Commission's favor. *See Curtis v. Oklahoma City Pub. Schs. Bd. of Educ.*, 147 F.3d 1200, 1214 (10th Cir. 1998). During the time period relevant to this lawsuit, Defendant owned and operated twenty-six, long-term care facilities in the state of New Mexico. The Charging Parties are former employees of Defendant. Three of the Charging Parties held the position of Certified Nursing Assistant ("CNA"). The job description for the position of CNA contained a requirement that the CNA be able to lift up to seventy-five pounds. The fourth Charging Party worked as an Activity Assistant.

---

[1]Pursuant to the parties' consent and the district court judge's designation, the summary judgment ruling was issued by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c).

All four Charging Parties became pregnant during the term of their employment with Defendant. As a result of their pregnancies, the Charging Parties were placed under work restrictions by their respective physicians. The work restrictions included various limitations on the amount each Charging Party was allowed to lift. The work restrictions arose from the Charging Parties' pregnancies and not from any injury sustained by a Charging Party at work. Each Charging Party could have performed all of her job duties with the exception of the heavy-lifting.

Defendant had instituted and maintained a policy pursuant to which it allowed employees to work modified-duty positions consistent with any work restrictions imposed by the employee's physician (the "Modified Duty Policy" or the "Policy"). The terms of the Modified Duty Policy expressly limited its availability to those employees who had sustained "a work-related injury while working for Horizon Healthcare Corporation." [2] Pursuant to the terms of the Policy, Defendant had provided modified-duty assignments to employees who had suffered work-related injuries. Each Charging Party, however, applied for and was denied a modified-duty assignment. Because their work restrictions

_____

[2]The Modified Duty Policy includes two examples of employees who would not be eligible for modified duty. One of these examples reads: "[A] pregnant employee with a 25 lb. lifting restriction is not eligible for modified duty."

prevented them from performing all of their job duties, the Charging Parties were terminated, laid off, or placed on an unpaid leave of absence by Defendant.

## B. Procedural History

The Charging Parties each filed a charge with the Commission alleging violations of Title VII of the Civil Rights Act of 1964 by Defendant. On March 19, 1997, the Commission filed a complaint[3] asserting a claim that Defendant had engaged in unlawful employment practices on the basis of sex (pregnancy) by refusing to provide the Charging Parties with modified-duty assignments.

Construing the complaint to include both disparate treatment and disparate impact claims, Defendant moved for summary judgment. The Commission filed a cross-motion for summary judgment. The district court granted Defendant's motion for summary judgment on the Commission's disparate treatment claim but denied it on the disparate impact claim. The Commission's cross-motion for summary judgment was denied.

The Commission's disparate impact claim was tried to the district court. At the close of the Commission's evidence, Defendant filed a motion to dismiss which was granted by the district court. The Commission filed its notice of appeal on November 24, 1998, seeking to appeal both the district court's grant of

---

[3]The Commission filed an amended complaint on November 25, 1997 to add the fourth Charging Party.

summary judgment to Defendant on the disparate treatment claim and the district court's grant of Defendant's motion to dismiss on the disparate impact claim. The Commission has since abandoned its appeal of the grant of the motion to dismiss. Thus, this matter is before this court solely on the Commission's appeal of the grant of summary judgment on its disparate treatment claim.

## II. DISCUSSION

### A. Standard of Review

This court reviews *de novo* a grant of summary judgment. *See Trujillo v. University of Colorado Health Sciences Ctr.*, 157 F.3d 1211, 1213 (10th Cir. 1998). Summary judgment is appropriate only if the admissible evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1541 (10th Cir.1995) (noting that only admissible evidence is considered when reviewing an order granting summary judgment). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" if a rational jury could find in favor of the nonmoving party on the evidence presented. *See id*.

The burden of showing that no genuine issue of material facts exists is borne by the moving party. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When, as in this case, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id*. at 671. This court draws all reasonable inferences in favor of the nonmoving party. *See Curtis*, 147 F.3d at 1214. If no genuine issue of material fact is in dispute, this court then determines whether the substantive law was correctly applied by the district court. *See Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir. 1996).

**B.    The Commission's Prima Facie Case of Disparate Treatment**

Title VII of the Civil Rights Act of 1964 prohibits, among other things, unlawful employment discrimination on the basis of an individual's sex. *See* 42 U.S.C. § 2000e-2. In 1976, the Supreme Court held that an employer's disability plan did not violate Title VII although it excluded pregnancy-related disabilities. *See General Elec. Co. v. Gilbert*, 429 U.S. 125, 140-41 (1976). In response to *Gilbert*, Congress passed the Pregnancy Discrimination Act ("PDA"). *See* Pub. L. No. 95-555, 92 Stat. 2076 (1978) (codified at 42 U.S.C. § 2000e(k)); *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678-79 & nn.15-17

(discussing legislative history of the PDA).  Pursuant to the PDA, the definitional section of Title VII was amended by the addition of the following language:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work . . . .

42 U.S.C. § 2000e(k).

The Commission's disparate treatment claim was brought pursuant to Title VII of the Civil Rights Act of 1964 , as amended by the PDA.  Claims brought under the PDA are analyzed in the same way as other Title VII claims of disparate treatment.  *See EEOC v. Ackerman, Hood & McQueen,    Inc.*, 956 F.2d 944, 947 (10th Cir. 1992).  To prevail under Title VII, a plaintiff must show, through either direct or indirect evidence, that the discrimination complained of was intentional.  *See Shorter v. ICG Holdings, Inc.   *, 188 F.3d 1204, 1207 (10th Cir. 1999).  A plaintiff who lacks direct evidence of intentional discrimination may use the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), to demonstrate intentional discrimination.  *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1278 (10th Cir.), *cert. denied*, 120 S. Ct. 50 (1999).

Although the Commission argued before the district court that the Modified Duty Policy itself constituted direct evidence of discrimination, the Commission has abandoned that argument on appeal. *See Ramsay v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir.1990) ("[A]n existing policy which itself constitutes discrimination" is direct evidence of discrimination.). In this appeal, the Commission argues only that it has met its burden by reliance on the indirect method of proof established by *McDonnell Douglas*.

A plaintiff relying on the *McDonnell Douglas* methodology bears the initial burden of establishing a prima facie case by a preponderance of the evidence. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981). By establishing her prima facie case, the plaintiff raises a rebuttable presumption that the defendant unlawfully discriminated against her. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). The burden of production then shifts to the defendant who must articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff. *See McDonnell Douglas*, 411 U.S. at 802. The defendant's burden at this stage is one of production, not one of persuasion. *See Burdine*, 450 U.S. at 254-56.

If the defendant is able to articulate a facially nondiscriminatory reason for the adverse employment action, the plaintiff can avoid summary judgment only if she can show that her "pregnancy was a determinative factor in the defendant's

employment decision, or show the defendant's explanation for its action was merely pretext." *Atchley v. Nordam Group, Inc.*, 180 F.3d 1143, 1148-49 (10th Cir. 1999). Although the burden of production shifts from plaintiff to defendant and back to plaintiff under the *McDonnell Douglas* framework, the ultimate burden of proving intentional discrimination is borne by the plaintiff. *See Hicks*, 509 U.S. at 507.

The Charging Parties' discrimination claims are based on the Defendant's refusal to place them in modified-duty assignments. This case, therefore, is analogous to those cases presenting failure-to-hire or failure-to-promote claims. To establish a prima facie case of disparate treatment on the basis of their pregnancies, the Charging Parties must show that: (1) they are members of a protected group; (2) they were qualified for the modified-duty positions sought; (3) they were denied modified-duty positions; and (4) they were denied the modified-duty assignments "under circumstances which give rise to an inference of unlawful discrimination." *Burdine*, 450 U.S. at 253; *see also York v. American Tele. & Tele. Co.*, 95 F.3d 948, 954 (10th Cir. 1996). Relying on opinions issued by several other courts of appeal and district courts from other circuits, Defendant argues, as it did before the district court, that the Commission can satisfy the fourth element of its prima facie burden only if it presents

evidence that similarly-situated employees were treated more favorably than the Charging Parties. [4]

The parties concede that the Commission has met its burden of showing the Charging Parties were protected-class members and suffered an adverse employment action when they were denied modified-duty assignments. The district court ruled, however, that the Commission had failed to sustain its burden on the remaining two elements of its prima facie case. The district court concluded the Commission had failed both to present evidence that the Charging Parties were qualified for the modified-duty positions they sought and to show that the Charging Parties were treated less favorably than similarly-situated employees.

### 1.    Qualification for Position Sought

Defendant argues the Charging Parties were not qualified for the modified-duty positions they sought because they were not injured on the job, a requirement for participation under the express terms of the Modified Duty Policy. Thus, the question before this court is whether an employer may defeat a plaintiff's prima facie case by challenging the plaintiff's qualification for the

---

[4]Although Defendant cites a case from this court in support of its articulation of the fourth element, that case does not even discuss the elements of the prima facie case. *See EEOC v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir. 1992) (addressing only the third stage of the *McDonnell Douglas* analysis and assuming that plaintiff had made out her prima facie case).

position on the grounds she has failed to meet an objective qualification that is not essential to the performance of the job.

In *Burrus v. United Telephone Co. of Kansas*, 683 F.2d 339, 341-42 (10th Cir. 1982), this court addressed a similar issue. In *Burrus*, the defendant alleged that the plaintiff lacked interpersonal skills and, thus, was not qualified for the position she sought. *See id*. at 342. The court concluded that allowing a defendant to rely on subjective qualifications to defeat a plaintiff's prima facie case would deny the plaintiff the opportunity to demonstrate that those subjective criteria were a means to effect a discriminatory action. *See id*. at 342. Accordingly, we held that an employer may not defeat a plaintiff's prima facie case by asserting that the plaintiff failed to satisfy subjective qualifications. *See id*.

This court conducted a similar analysis in *MacDonald v. Eastern Wyoming Mental Health Ctr.*, 941 F.2d 1115, 1118-21 (10th Cir. 1991). In *MacDonald*, the defendant contended that the plaintiffs were discharged because their work was not satisfactory. *See id*. at 1117. Reciting the defendant's proffered reasons for discharging the plaintiffs, the district court concluded that the plaintiffs had failed to meet their prima facie burden because they were unable to show that their work was satisfactory at the time of their discharge. *See id*. at 1119. This court concluded that the district court erred when it considered the defendant's

proffered reasons for the plaintiffs' discharge in evaluating the plaintiffs' prima facie case. *See id*. We held that a defendant cannot defeat a plaintiff's prima facie case by articulating the reasons for the adverse employment action because the plaintiff in such a situation would be denied the opportunity to show that the reasons advanced by the defendant were pretextual. *See id*. at 1119-20.

> Short-circuiting the analysis at the prima facie stage frustrates a plaintiff's ability to establish that the defendant's proffered reasons were pretextual . . . ; if a plaintiff's failure to overcome the reasons offered by the defendant for discharge defeats the plaintiff's prima facie case, the court is then not required to consider plaintiff's evidence on these critical issues.

*Id*. at 1119; *see also Kenworthy v. Conoco*, 979 F.2d 1462, 1470 (10th Cir. 1992).

Defendant's argument that a plaintiff is not qualified and therefore unable to establish a prima facie case unless she meets objective criteria not related to the performance of the job at issue is analogous to the arguments addressed and rejected in both *Burrus* and *MacDonald*. Here, Defendant attempts to defeat the Commission's prima facie case with one of the reasons it proffers to justify its denial of modified-duty assignments to the Charging Parties, i.e., the Charging Parties were not injured on the job and, therefore, were not qualified for modified-duty assignments. When an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an

-13-

employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case. To hold otherwise would be tantamount to collapsing the first and second stages of the *McDonnell Douglas* analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's explanation for the adverse employment action is pretextual.

At the prima facie stage of the *McDonnell Douglas* analysis, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant. *See MacDonald*, 941 F.2d at 1119. Defendant's assertions that the Charging Parties were denied modified-duty assignments because they did not suffer on-the-job injuries are directed to the issue of whether Defendant has articulated a legitimate, non-discriminatory reason for the adverse employment action suffered by the Charging Parties. In this case, requiring the Commission to address Defendant's assertions regarding the Charging Parties' qualifications at the prima facie stage is the equivalent of requiring the Commission to dispel Defendant's explanation for the adverse employment action.

One purpose behind the *McDonnell Douglas* prima facie burden is to require a plaintiff to eliminate the most common legitimate reasons for the adverse employment action suffered, i.e., "an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *International Bhd.*

*of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977); *see also Burdine*, 450 U.S. at 253-54. A plaintiff's failure to meet employer-imposed objective qualifications that have no relation to the performance of the job at issue is irrelevant at the prima facie stage of the *McDonnell Douglas* inquiry because it does not compel the conclusion that the plaintiff suffers from an "absolute or relative lack of qualifications." The relevant inquiry at the prima facie stage is not whether an employee or potential employee is able to meet all the objective criteria adopted by the employer, but whether the employee has introduced some evidence that she possesses the objective qualifications *necessary to perform the job sought*. If an employee is able to introduce such evidence, she has satisfied her prima facie burden of demonstrating that she does not suffer from an "absolute or relative lack of qualifications." Thus, a plaintiff has satisfied her prima facie burden of showing she is qualified by presenting some credible evidence that she possesses the objective qualifications necessary to perform the job at issue. *Accord Anderson v. Zubieta*, 180 F.3d 329, 342 (D.C. Cir. 1999) (holding that a plaintiff can satisfy his prima facie burden by demonstrating that he possesses those "objective qualifications that can be shown to be truly required to do the job at issue."); *Williams v. Boorstin*, 663 F.2d 109, 117 (D.C. Cir. 1980) ("The prima facie showing relates qualifications of the particular employee to performance requirements of the particular job."); *Powell v.*

*Syracuse University*, 580 F.2d 1150, 1155 (2d Cir. 1978) ("In the context of this case, [plaintiff] has demonstrated that she possesses the basic skills necessary for the performance of her job, and has thereby made out a prima facie showing of competence.").

Accordingly, we hold that objective, employer-imposed qualifications that have no bearing on an applicant's ability to perform the job sought, like subjective qualifications, are more properly considered at the second stage of the *McDonnell Douglas* analysis and a plaintiff's failure to meet such qualifications cannot be used to defeat the plaintiff's prima facie case. Thus, to meet its prima facie burden, the Commission need only present some credible evidence that the Charging Parties possessed the basic skills necessary to perform the modified-duty assignments each sought. *Accord Kenworthy,* 979 F.2d at 1470 (holding that plaintiff had made out her prima facie case even though her qualifications were disputed by the defendant).

The Commission presented evidence that the Charging Parties were fully able to perform the modified-duty jobs each sought.[5] Defendant has neither challenged the ability of the Charging Parties to perform modified-duty

---

[5]The district court specifically found that the Charging Parties could perform all the job duties of a CNA with the exception of the heavy lifting portion "which would have required modified duty or assistance with lifting." Defendant does not challenge this finding.

assignments nor argued that an on-the-job injury is an objective, performance-related qualification which must be met before an applicant is able to perform the modified-duty positions sought by the Charging Parties. The Commission, therefore, has satisfactorily demonstrated that the Charging Parties possess the basic skills necessary to perform the positions they sought and thus it has met its prima facie burden of demonstrating that the Charging Parties were qualified for modified-duty assignments. The district court's conclusion that the Commission had failed to satisfy the second element of its prima facie burden was erroneous as a matter of law.

## 2. Comparison to Similarly-Situated Employees

Defendant next argues the Commission cannot make out the fourth element of its prima facie case unless it can show that the Charging Parties were treated less favorably than their non-pregnant counterparts. *See Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1380 (10th Cir. 1994) (stating, in *dicta*, that a plaintiff establishes the fourth element of her prima facie case by demonstrating that she was "treated less favorably than her male counterparts"); *see also Ackerman, Hood & McQueen, Inc*., 956 F.2d at 948 (discussing the issue at the pretext stage of the *McDonnell Douglas* analysis and holding that the appropriate comparison in cases involving PDA claims is "between pregnant and nonpregnant workers, not between men and women"). Defendant argues the Charging Parties must be

compared to non-pregnant employees who were temporarily disabled as a result of an injury each suffered off the job. The Commission argues that if it is required to show the Charging Parties were treated differently than their non-pregnant counterparts for purposes of meeting its prima facie burden, the Charging Parties are most appropriately compared to all temporarily-disabled, non-pregnant employees whether they sustained their injuries on or off the job. *See Ensley-Gaines v. Runyon* 100 F.3d 1220, 1225-26 (6th Cir. 1996). Thus, the parties disagree on what subclass of non-pregnant employees constitutes the Charging Parties' "counterparts."

This court views the standard argued by Defendant as the strictest possible articulation of the fourth element under the facts of this case. [6] We apply the

---

[6]While we resolve the issue in this case by applying the fourth element advocated by Defendant, we express no opinion on whether it is a proper articulation of the fourth element under the facts of this case or whether the Commission could have established the fourth element of its prima facie case in some other manner. Nothing in the case law in this circuit *requires* a plaintiff to compare herself to similarly-situated co-workers to satisfy the fourth element of her prima facie case. A plaintiff alleging discrimination in violation of Title VII can satisfy the fourth element of her prima facie case in a number of ways. *See, e.g., Perry v. Woodward*, 199 F.3d 1126, 1140 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 1964 (2000) (holding that a plaintiff claiming discriminatory discharge established the fourth element by showing the job was not eliminated); *Mohammed v. Callaway*, 698 F.2d 395, 398 (10th Cir. 1983) (concluding that a plaintiff who claimed discriminatory failure to promote established the fourth element by showing the position was filled). The articulation of the fourth element advocated by Defendant appears to have evolved from the language of *McDonnell Douglas* itself in which a comparison between the plaintiff and his similarly-situated co-workers was discussed in the context of the pretext stage of

fourth element as articulated by Defendant only because the Commission has met

its burden even under that standard. This court notes, however, that adopting the

approach advocated by Defendant would lead to the same danger of compressing

the three stages of the *McDonnell Douglas* analysis discussed *supra*.[7]

_____

the analysis, not the prima facie stage. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973). Thus, while evidence that a defendant treated a plaintiff differently than similarly-situated employees is certainly *sufficient* to establish a prima facie case, it is "[e]specially relevant" to show pretext if the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action. *See id*.

[7]Evidence that pregnant women were treated differently than other temporarily-disabled employees, left unexplained, is sufficient to raise an inference of illegal discrimination at the prima facie stage. Of course, the defendant can immediately dispel this inference when it articulates its legitimate, non-discriminatory reason for the disparate treatment. The plaintiff would then have the opportunity to show that the defendant's proffered reason is pretextual. If a plaintiff is compared only to non-pregnant employees injured off the job, her case would be "short circuited" at the prima facie stage and she would be denied the opportunity to show that the policy, which may be facially neutral, is actually a pretext for unlawful discrimination. *See MacDonald v. Eastern Wyo. Mental Health Ctr.*, 941 F.2d 1115, 1119 (10th Cir. 1991). By way of example, an employer could adopt a policy, similar to the Modified Duty Policy, as a method of ensuring that it would be able to terminate pregnant women with work restrictions while, at the same time, ensuring that it could retain other temporarily-disabled employees. The employer's intent in adopting such a policy could be to unlawfully discriminate against pregnant employees. Under the approach advocated by Defendant, however, a plaintiff would never have the opportunity to show that the defendant's real reason for instituting the policy was to discriminate against pregnant women. The better approach would be to hold that a plaintiff has satisfied the fourth element of her prima facie case by showing that she was treated differently than a non-pregnant, temporarily-disabled employee. There would be no danger in this approach because the employer could immediately dispel the inference arising from the prima facie case by coming forward with its legitimate, nondiscriminatory explanation of why the pregnant employee was treated differently than the non-pregnant employee.

Assuming, without deciding, that the Commission can only meet its prima facie burden by showing that non-pregnant employees who sustained off-the-job injuries were treated more favorably than the Charging Parties, the Commission has met that burden. The Commission has presented admissible evidence that Defendant treated two non-pregnant employees who suffered off-the-job injuries more favorably than the Charging Parties. [8] Defendant, however, argues that this evidence constitutes nothing more than isolated, sporadic incidents of differing treatment that are insufficient to establish a prima facie case.

Defendant's argument seems to stem from a Supreme Court case involving a claim of a "pattern or practice" of discrimination. *See Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876 (1984) (holding that "[p]roving isolated or sporadic discriminatory acts by the employer is insufficient to

---

Because nothing in the PDA requires an employer to give preferential treatment to pregnant employees, summary judgment would appropriately be entered for the defendant if the plaintiff is unable to show that the proffered reason is pretextual.

[8]Contrary to the argument raised by Defendant, it is irrelevant that these individuals did not actually apply for modified duty under the Modified Duty Policy. It is sufficient for purposes of the Commission's prima facie burden that the individuals were treated "more favorably" by being allowed to work a lightened workload when they were injured off the job. Defendant's position that the comparators were not similarly situated because they had not formally applied for modified-duty assignments would permit Defendant to maintain the Modified Duty Policy as a sham policy to mask covert, unlawful discrimination. For example, supervisors could tell non-pregnant employees injured off the job not to apply for modified-duty positions yet allow those employees to work lightened workloads on an *ad hoc* basis.

establish a prima facie case of a *pattern or practice* of discrimination . . . ." (emphasis added)). The Court in *Cooper* clearly and unequivocally distinguished the prima facie burden borne by a class in a pattern-or-practice case from the same burden borne by an individual plaintiff in a case involving a claim of individual discrimination and concluded there was no commonality. *See id.* at 876-80. *Cooper*, therefore, is inapposite. Defendant's position is also the product of its incorrect reading of one of the two cases it cites in support of its argument. *See Gooch v. Meadowbrook Healthcare Servs. of Florida, Inc.*, 1996 WL 67193, at *3 (10th Cir. 1996) (unpublished disposition). In *Gooch*, this court concluded that the plaintiff had met her prima facie burden but discussed the number of comparators in the context of plaintiff's burden at the *pretext* stage.

Defendant also relies on the district court's opinion in *Urbano v. Continential Airlines, Inc.*, 1996 WL 767426 (S.D. Tex. 1996), *aff'd*, 138 F.3d 204 (5th Cir.), *cert. denied*, 119 S. Ct. 509 (1998). In *Urbano*, the district court first addressed the plaintiff's *disparate impact* claim and concluded that the plaintiff had failed to meet the fourth element of her prima facie case because she had offered evidence of favorable treatment being afforded to "only one employee." *Id*. at *3. To establish a prima facie case in a disparate impact case, a plaintiff must prove that a "specific identifiable employment practice or policy

caused a significant disparate impact on a protected group." *Ortega v. Safeway Stores, Inc.*, 943 F.2d 1230, 1242 (10th Cir. 1991). Consequently, disparate impact claims are more analogous to pattern-or-practice claims than they are to disparate treatment claims. *See*, *e.g.*, *Cooper*, 467 U.S. at 876 (holding there is no commonality in the prima facie burden in disparate treatment cases and pattern-or-practice cases); *Davoll v. Webb*, 194 F.3d 1116, 1148 (10th Cir. 1999) (holding that the district court properly applied a disparate impact framework in a pattern-or-practice case). Although the district court in U*rbano* acknowledged the differences between disparate impact and disparate treatment claims, the district court improperly evaluated the sufficiency of the plaintiff's prima facie case of disparate treatment using the same standard it had applied to her disparate impact claim. *See id.* at *3. For this reason alone, *Urbano* is unpersuasive. [9]

We again point out what should now be obvious -- the burden imposed on a plaintiff at the prima facie stage is "not onerous." *Burdine*, 450 U.S. at 253.

> The importance of McDonnell Douglas lies, not in its specification
> of the discrete elements of proof there required, but in its
> recognition of the general principle that any Title VII plaintiff must

---

[9]Although the district court's conclusion that the plaintiff had failed to meet her prima facie burden with respect to her disparate treatment claim was affirmed by the Court of Appeals for the Fifth Circuit, the appellate court did not specifically address the issue of the number of comparators a plaintiff must proffer at the prima facie stage. *See Urbano v. Continental Airlines, Inc.*, 138 F.3d 204, 208 (5th Cir.), *cert. denied*, 119 S. Ct. 509 (19989).
.

-22-

carry the initial burden of offering evidence adequate to create an inference that an employment decision was based on a discriminatory criterion illegal under the Act.

*Teamsters*, 431 U.S. at 358; *see also EEOC v. Flasher Co.*, 986 F.2d 1312, 1318 (10th Cir. 1992) ("The presumption arising under the first prong of McDonnell Douglas is a relatively weak inference that corresponds to the small amount of proof necessary to create it."). The Commission has satisfied the fourth element of the prima facie case advocated by Defendant by presenting admissible evidence that Defendant treated at least one non-pregnant employee, who was temporarily disabled as a result of injuries she suffered off the job, more favorably than the Charging Parties. *Accord Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 646 (3d Cir. 1998) (noting that a plaintiff may establish her prima facie burden by comparing herself to a single member of the non-protected class); *see also Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998) (concluding, without discussion, that plaintiffs had satisfied their prima facie burden by demonstrating that they were terminated while "at least one younger and/or nonminority employee was retained").

## C.    The Commission's Evidence of Pretext

Although the district court did not move beyond the first stage of the *McDonnell Douglas* analysis and specifically address the question of whether Defendant met its burden of proffering a facially nondiscriminatory reason for

the adverse employment action suffered by the Charging Parties, the Commission has conceded that Defendant has met this burden. Defendant has stated that the Charging Parties were denied modified-duty assignments because their temporary disabilities did not stem from injuries they suffered on the job. In support of this proffered explanation, Defendant has further stated that the requirement an employee be injured on the job as a prerequisite to participation under the Modified Duty Policy is directly related to the underlying purpose for establishing the Policy, i.e., the reduction of its workers' compensation costs.

Notwithstanding its concession that Defendant has met its burden at the second stage of the *McDonnell Douglas* analysis, the Commission argues it has presented sufficient evidence for a reasonable jury to conclude that Defendant's explanation is pretextual. The record in this case is sufficiently developed to allow this court to address this question. *See In re Robinson*, 921 F.2d 252, 253 (10th Cir.1990) ("An appellee may defend the judgment won below on any ground supported by the record without filing a cross appeal.").

The Commission can withstand summary judgment by presenting evidence sufficient to raise a genuine dispute of material fact whether Defendant's articulated reason for the adverse employment action is pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2102 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's

asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."); *see also Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir.1995). Although contested by Defendant, the Commission argues that the admissible evidence it has presented is sufficient to raise a genuine issue of material fact regarding the credibility of Defendant's proffered explanation for the adverse employment action suffered by the Charging Parties.

A plaintiff establishes pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1317 (10th Cir. 1999) (quotation omitted). Evidence sufficient to raise a genuine question whether an employer's proffered explanation is pretextual may "take a variety of forms." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578 (1978). The Commission presented evidence that Defendant has never conducted a formalized study of the cost savings purportedly associated with maintaining the Modified Duty Program. Additionally, the Commission points to the deposition testimony of an employee who held the position of Regional Director of Human Resources. This employee was unable to articulate the economic factors justifying the Modified Duty Policy and was unable to explain how the Policy reduced workers' compensation costs.

Defendant argues, and the Commission concedes, however, that the failure to conduct a formal study of the benefits realized by maintaining the Modified Duty Policy, standing alone, does not undermine Defendant's assertion that it had a good-faith belief the Modified Duty Policy reduced workers' compensation costs. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998).

The Commission's argument, however, is not that Defendant's failure to document the cost savings allegedly associated with maintaining the Modified Duty Policy, standing alone, supports a finding of pretext. The Commission argues that this failure coupled with Defendant's lack of inquiry into the costs and/or cost savings of extending the Modified Duty Policy to include employees injured off the job is sufficient for a jury to conclude that Defendant's proffered explanation is pretextual. In support of its argument, the Commission relies on the testimony of one of Defendant's employees who assisted in the drafting of the Modified Duty Policy. This employee testified that there was "plenty of [modified duty] work available" but could not articulate the costs savings realized by refusing to extend the Modified Duty Policy to employees injured off the job. The employee conceded that Defendant has never conducted any inquiry into the possibility of extending the Policy to employees injured off the job. The Commission argues that, in light of the evidence there was no shortage of modified duty positions available, Defendant's lack of inquiry into the factual

-26-

basis for the distinction made in the Modified Duty Policy between employees injured on the job and those injured off the job raises a genuine question as to whether Defendant had a good faith belief that it was necessary to maintain the distinction to realize the cost savings. The Commission contends that a reasonable jury could conclude that Defendant made the distinction in the Policy only to ensure that modified duty positions would not be made available to pregnant employees.

The Commission has also attempted to establish pretext by presenting evidence that Defendant treated non-pregnant workers injured off the job more favorably than the Charging Parties. The Commission's admissible evidence on this point consists of the affidavits of two non-pregnant employees who testified that they were allowed to work a lightened workload after they suffered off-the-job injuries. [10] One affiant testified that when she was diagnosed with

---

[10]For the same reasons set forth in note 8, *supra*, it is irrelevant for purposes of the pretext analysis that these two employees did not formally apply for modified-duty positions. It also irrelevant that these employees and the Charging Parties did not work with the same supervisor. The "same supervisor" test has been found to be relevant in cases involving allegations of discriminatory *disciplinary* actions. *See*, *e.g.*, *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997). Defendant, however, has not demonstrated how the "same supervisor" test is legally relevant to the inquiry of whether the Charging Parties have been the victims of an allegedly discriminatory *company-wide* policy. Thus, the fact that the Charging Parties and the affiants did not share the same supervisor does not preclude consideration of the Commission's evidence. We do not decide whether the "same supervisor" test has any application outside the disciplinary context under some other set of facts. *See Ercegovich v. Goodyear*

endometriosis, her supervisor allowed her to receive assistance with some of her job duties, including heavy lifting, for a period of three days. The same affiant testified that when she became pregnant and had her lifting restricted by her physician, she was not allowed any similar relief from her job duties. The second affiant testified that she suffered a knee injury as a result of her involvement in an automobile accident. She further testified that after providing Defendant with a physician's note restricting her lifting to five pounds, she was allowed a lightened workload and was not required to do any lifting beyond her physician's restriction. Although it is unclear from the affidavit, it appears that this affiant had a lightened workload for at least 18 months.

Unexplained or irrational differences in Defendant's treatment of pregnant and non-pregnant employees do not establish discrimination as a matter of law. Nevertheless, differential treatment of similarly-situated employees *may* support a finding of pretext. [11] *See McDonnell Douglas*, 411 U.S. at 804.

The Commission has also presented evidence that Defendant refused to provide modified-duty assignments to pregnant employees who were injured on

---

*Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (recognizing that the "same supervisor" test may not be relevant in all fact situations).

[11]In light of this court's conclusion that the Commission has presented sufficient evidence, taken in the aggregate, to support a finding of pretext, it is unnecessary to address the question of whether the two isolated incidences of disparate treatment identified by the Commission, standing alone, are sufficient in this case to support a finding of pretext.

the job during their pregnancies. The Commission contends that this evidence demonstrates an unlawful discriminatory bias against pregnant employees in Defendant's allocation of modified-duty assignments. The Commission's evidence on this point consists of affidavits from two pregnant employees who claim they were denied modified-duty assignments although they had suffered work-related injuries during their pregnancies. The Commission claims that a jury could conclude from this evidence that the real purpose behind the distinction made in the Modified Duty Policy between employees injured on the job and those injured off the job was not to limit workers' compensation costs but to unlawfully discriminate against pregnant workers.

The Commission then presented evidence which it claims shows that Defendant harbored a bias against employees who became pregnant. The Commission's evidence includes statements and comments made by managers employed by Defendant who were responsible for the implementation of the Modified Duty Policy. [12] When one of the Charging Parties informed her

[12]Defendant's argument that these comments are irrelevant because they were not made by either of the two individuals *directly* responsible for processing modified-duty requests and administering the Modified Duty Policy is unpersuasive. The statements were made by the affiants' supervisors who were responsible for articulating company policy, assisting employees with their modified-duty applications, and who, in some cases, apparently had the unilateral power to allow the affiant to work a lightened workload. In at least two instances, the comment was made directly to a Charging Party by her immediate supervisor.

supervisor that she was pregnant and inquired into the availability of modified duty, she was told "[we] don't have any light duty for pregnant women." Another Charging Party testified that she experienced a similar reaction when she informed her supervisor of her pregnancy and was told that there is no modified-duty work for "pregnant people." One affiant, who worked as a CNA, testified that when she discussed her pregnancy with a registered nurse employed by Defendant, she was told that she "should not have taken the job if [she] was going to get pregnant." Another affiant testified that at one point during her pregnancy, a supervisor told her that she was "too big to be working" and removed her from the schedule. After a careful review of the entire record, we conclude that these comments, read in context and construed in the light most favorable to the Commission, are not sufficient by themselves to support a finding of pretext. None of the admissible, relevant evidence presented by the Commission, standing alone, is sufficient to raise a genuine issue of material fact on pretext. The Commission's proffered evidence viewed in the aggregate, however, is sufficient to raise a genuine doubt about Defendant's motivation for making a distinction in the Modified Duty Policy between employees injured on the job and those injured off the job. From the Commission's evidence, considered in the aggregate and construed in the light most favorable to the Commission, a reasonable jury could conclude that Defendant's proffered

explanation for the distinction is pretextual. Thus, we hold that the Commission has produced sufficient evidence to preclude the entry of summary judgment in this case.

## III.   CONCLUSION

This court concludes that the Commission has presented a prima facie case of pregnancy discrimination and presented sufficient evidence for a jury to conclude Defendant's reason for denying modified duty to the Charging Parties was pretextual. The grant of summary judgment by the district court in favor of Defendant is **reversed** and this case is **remanded** to the district court for further proceedings consistent with this opinion.