**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 27, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CYNTHIA ANDERSON,

        Plaintiff-Appellant,

v.

THE CATO CORPORATION,

        Defendant-Appellee.

No. 11-3003
(D.C. No. 2:10-CV-02022-JWL)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **BALDOCK**, and **TYMKOVICH**, Circuit Judges.

---

      Cynthia Anderson appeals from the district court's entry of summary judgment in favor of The Cato Corporation on her claim of discrimination under the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND[1]

Anderson began working for Cato as a part-time sales associate in Cato's Leavenworth, Kansas, store in February 2008. Beginning on April 8 or 9, 2008, she had to leave the sales floor and go to a restroom and vomit "once or twice" per shift. App. at 85 (Anderson depo. at 49:21 to 50:24). Anderson discovered she was pregnant on April 9. The next day she informed assistant manager Kassie Bechtold that she was pregnant. On Friday, April 11, Anderson realized she needed to see her doctor and get some medication for her nausea. On that day, she asked the store manager, Colleen May, if she could take a few days off to see her doctor and get her medications squared away. May told Anderson to take a couple of days off to get some medication and get back on her feet, and to keep May informed of her status. According to Anderson, May seemed "okay" with this plan. *Id.* at 86 (Anderson depo. at 54:24).

Anderson saw her doctor on April 12 and appears to have missed some scheduled shifts. On April 15, dehydrated from vomiting, she was admitted to the hospital. According to Anderson, she called May on April 15, who told her that May's manager, Cynthia Canada, had determined that Cato had to terminate her employment as an associate, but May would try to hold open as long as possible

---

[1]    In construing the facts, we view the evidence and all reasonable inferences from it in the light most favorable to Anderson as the party opposing summary judgment. *See E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

an assistant manager position for which Anderson was being considered. Anderson was discharged from the hospital on April 17. When she again contacted May on April 17 or 18, she learned that the assistant manager position had been given to another employee.

On April 21, Anderson saw her doctor again, who wrote a note prescribing bed rest for three weeks. The note was faxed to Cato from the home of Anderson's live-in boyfriend's grandparents. Anderson claimed she had never seen this note. *Id.* at 226-27 (Anderson depo. at 71:18 to 74:25). She claimed that when she was discharged, she was told just to take it easy, but she could go back to work. *Id.* at 227 (Anderson depo. at 76:6-14). Anderson's medical records related to her hospital stay were faxed to Cato on April 25.

Anderson's personnel file contained a "Change Notice" form that May filled out and signed. It had an effective date of "4/21/08." *Id.* at 156. A box was checked indicating a voluntary termination because Anderson was "[n]ot Eligible for Leave of Absence/FMLA." *Id.* In the explanation box, May wrote that Anderson was "having complications with pregnancy. Will return to be rehired in a few weeks." *Id.* The "Yes" box for "Recommended for Rehire" was checked. The form recorded Anderson's last day of work as "4/11/08." *Id.* The form was dated "4/29/08." *Id.* May testified that employees like Anderson who did not qualify for leave under Cato policy could not be kept on the payroll but could be rehired later. Anderson never sought to be rehired by Cato.

A month or two after Cato terminated her employment, Anderson asked May for a letter stating the reasons for her termination so that she could apply for public assistance (apparently health benefits). May wrote that "[w]e terminated her employment on 4/11/2008 due to complications with her pregnancy resulting in bedrest." *Id.* at 177. May's undisputed testimony was that Anderson asked for the letter to indicate termination on April 11, 2008, which was the last day Anderson worked, so Anderson could get benefits as of that date.

Bechtold became store manager in October 2008. Sometime thereafter, Anderson asked Bechtold to draft a letter explaining the reason Cato terminated her employment in order to get unemployment and health insurance. Bechtold wrote that Anderson

> was terminated due to pregnancy related illnesses. Cynthia needed off three weeks for bed rest required by a doctor. However, according to Cato policy a part time sales associate has to be release[d] if she/he needs off for longer than seven days unless she/he has been employed for 365 days. Cynthia did not apply to the guidelines; therefore she was forced to be terminated. . . . To my knowledge, Cynthia Anderson should be capable of working now.

*Id.* at 179. Bechtold's undisputed testimony was that Anderson "told me that she needed me to put on there it was because of her pregnancy." *Id.* at 137 (Bechtold depo. at 119:10-11). Bechtold also stated that she added the clarification that Cato terminated Anderson's employment because she needed leave she was not entitled to.

-4-

After Anderson filed this action, Cato moved for summary judgment. In granting Cato's motion, the district court first determined that May's letter was not direct evidence of discrimination, reasoning that the reference to bed rest made clear that Cato terminated Anderson's employment because she was unable to work and was not entitled to leave. The court reached the same conclusion regarding Bechtold's letter, focusing on the clarifying language Bechtold had included as well as the fact that Anderson told her the letter had to state she was terminated because of her pregnancy. The court also considered it significant that Anderson asked for the letters and told May and Bechtold what those letters should state as reasons.

Turning to the indirect method of proving discrimination under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), the district court assumed Anderson could establish a prima facie case of discrimination but concluded that the evidence did not raise a disputed issue of material fact whether Cato's proffered reason for terminating Anderson's employment was pretext. This appeal followed.

## II. DISCUSSION

We review the district court's grant of summary judgment de novo. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "The court shall grant summary judgment if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Pregnancy Discrimination Act requires employers to treat pregnant employees "the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). "A woman unable to work for pregnancy-related reasons is entitled to disability benefits or sick leave on the same basis as employees unable to work for other medical reasons." 29 C.F.R., Pt. 1604, App.

Anderson first argues that the district court erred in determining that the May and Bechtold letters were not direct evidence of discrimination. We consider Anderson's "direct evidence" argument as invoking the direct method of proving discrimination as opposed to the indirect method under *McDonnell Douglas*. We recently reviewed this distinction: "[T]he term '*direct evidence*' . . . refers to a narrow category of 'evidence, which if believed, proves the existence of a fact in issue without inference or presumption.'" *Twigg v. Hawker Beechcraft Corp.*, ___ F.3d ___, No. 10-3118, 2011 WL 4838937, at *18 n.8 (10th Cir. Oct. 13, 2011) (emphasis added) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007)). In contrast, the *direct method* of proof requires "evidence that directly reflects the forbidden animus, regardless of whether that evidence is direct or circumstantial." *Id.* Direct evidence of

employment discrimination is "'usually impossible to obtain,'" and is generally limited to "'an admission by the decisionmaker such as "I fired him because he was too old."'" *Id.* (quoting *Ostrowski v. Atl. Mut. Ins. Cos.*, 968 F.2d 171, 181 (2d Cir. 1992)). "A statement that can plausibly be interpreted two different ways—one discriminatory and the other benign—does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Hall*, 476 F.3d at 855 (quotation omitted).

Despite the difficulty in obtaining direct evidence of discrimination, Anderson claims she has it in the form of the May and Bechtold letters. She argues that the letters plainly state that Cato terminated her employment because of her pregnancy. However, Anderson's argument is based on a limited reading of those letters, one that focuses only on the references to her pregnancy. As May's letter states, it was the need for bed rest that led to Cato's decision. In order to conclude that May's letter directly reflects discriminatory animus, one must infer that Cato would not have made the same decision in the case of another worker needing bed rest for a condition unrelated to pregnancy. As to Bechtold's letter, the first sentence does state that Cato terminated Anderson's employment "due to pregnancy related illnesses." App. at 179. But read as a whole, as it must be, the letter clearly explains that Cato did not terminate Anderson's employment simply because of the fact of Anderson's pregnancy-related illness, but because she needed leave to which she was indisputably not entitled. Moreover, there is

no showing that Bechtold was "involved in the decisionmaking process," which is a necessary component of the direct method of proof, *see Twigg*, 2011 WL 4838937, at *9. Consequently, we conclude that the letters do not constitute direct evidence of discrimination and do not show discrimination under the direct method of proof.

Turning to the indirect method of proof under *McDonnell Douglas*, Anderson argues that Cato's proffered nondiscriminatory rationale—that she needed leave she was not entitled to—was a pretext for unlawful discrimination.[2] "A plaintiff establishes pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1198 (quotation omitted).

For her pretext argument, Anderson first points to the May and Bechtold letters. But as our previous discussion of the letters demonstrates, no reasonable juror could infer that Cato fired Anderson simply because of her pregnancy-related illness. Moreover, there is no showing that Cato's policy of terminating employees who needed extended leave to which they were not entitled, then offering to hire them back when they were able to work again, was

---

[2] We will assume, as the district court did, that Anderson can establish a prima facie case of discrimination under the Pregnancy Discrimination Act.

-8-

not evenly applied to all employees regardless of whether the employee was pregnant. *See* 42 U.S.C. § 2000e(k); 29 C.F.R., Pt. 1604, App.

Anderson also argues that May was a self-described stickler for policy and therefore her grant of permission for Anderson to take a couple of days off without punishment to see her doctor—leave to which Anderson had no entitlement—shows pretext because it is contrary to Cato policy. However, the fact that May let Anderson take a couple of days off to see a doctor even though Anderson did not qualify for any sick leave is not evidence from which a reasonable fact-finder could infer pretext as to Cato's later decision to terminate her employment for needing three weeks of leave to which she was not entitled.[3]

The judgment of the district court is AFFIRMED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

---

[3]    In the last paragraph of her brief, Anderson argues that given her testimony that May told her on the telephone sometime before April 17 that her employment had been terminated, the jury should determine whether May's letter reciting "April 11" as the date of her termination is an accurate account. We fail to see where this argument was raised in the district court. Accordingly, Anderson has not preserved it for our review. *See Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992).