**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 15, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

STACEY JACKSON,

      Plaintiff - Appellant,

v.

J.R. SIMPLOT COMPANY; SIMPLOT
PHOSPHATES, LLC,

      Defendants - Appellees.

No. 16-8044
(D.C. No. 2:15-CV-00112-NDF)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **LUCERO**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

     Stacey Jackson appeals the district court's grant of summary judgment in favor

of her former employers, J.R. Simplot Co. and Simplot Phosphates, LLC ("Simplot"),

on her claim brought under the Pregnancy Discrimination Act ("PDA"), 42 U.S.C.

§§ 2000e-2(a)(1), 2000e(k).  Exercising jurisdiction under 28 U.S.C. § 1291, we

affirm.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

Jackson worked as an Operator for Simplot at its fertilizer plant in Rock Springs, Wyoming. Operators had to be able to carry more than fifty pounds, and they could be exposed to industrial chemicals, dirt, dust, gases, fumes, and odors. In the fall of 2013, Jackson began fertility treatment. She requested transfer to a less physically demanding job or light duty status. Jackson submitted a letter from her doctor imposing a lifting restriction and recommending that she be on light duty until December 3, 2013. To accommodate the lifting restriction, Simplot's shipping superintendent temporarily assigned Jackson to operate the switch engine or loader for two weeks. Simplot did not employ administrative assistants at the plant and had few office positions. Moreover, the employees working in administrative positions were also exposed to fumes, dust, and gases.

In early December 2013, Jackson learned she was pregnant. After she announced her pregnancy to her supervisor, he told her he could no longer accommodate her lifting restriction and referred her to Human Resources Manager Debbie Allen. Allen provided Jackson the Operator job description and a chemical data sheet for Jackson to review with her doctor.

Early in her pregnancy, Jackson's doctor provided several letters to Simplot concerning work restrictions related to chemical exposure. The doctor's first letter, dated December 12, 2013, stated that Jackson could not be exposed to three chemicals on Simplot's list. In the second letter, dated December 16, 2013, he stated that the three chemicals "have not been scientifically proven to cause harm based on

2

typical, daily exposure," but nevertheless "recommend[ed] limiting exposure to any potentially harmful chemicals by allowing [Jackson] to work light duty office work." The third letter repeated the second. In the fourth letter, dated January 31, 2014, Jackson's doctor reiterated the same recommendations but added that Jackson would be able to perform the essential functions of an unspecified job. The job description for an Administrative position was faxed with the letter. A fifth letter on February 28, 2014, stated that Jackson could return to her Operator position. Thereafter, Jackson returned to work.[1]

After exhausting her administrative remedies, Jackson filed a federal complaint asserting claims for: disparate treatment in violation of the PDA; denial of her rights under the Family and Medical Leave Act and retaliation for exercising those rights; intentional infliction of emotional distress; breach of contract and employment policies; and breach of the covenant of good faith and fair dealing. The district court granted summary judgment in favor of Simplot. Jackson has abandoned on appeal all claims except her PDA claim.

## II

We review de novo the district court's grant of summary judgment. Smothers v. Solvay Chems., Inc., 740 F.3d 530, 538 (10th Cir. 2014). We view the evidence and draw all reasonable inferences in favor of Jackson as the nonmoving party. Id.

---

[1] Jackson left work again on May 27, 2014, for the remainder of her pregnancy. She does not claim that her time off work after May 27 violated the PDA. Consequently, her PDA claim is based on the time period between December 12, 2013 and February 28, 2014.

3

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The PDA "makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." Young v. United Parcel Serv., Inc., 135 S. Ct. 1338, 1343 (2015). Under § 2000e(k), "employers must treat 'women affected by pregnancy the same for all employment-related purposes as other persons not so affected but similar in their ability or inability to work.'" Id. (quoting § 2000e(k)) (ellipses omitted). Jackson relies on indirect evidence of discrimination. We thus analyze her claim under the familiar McDonnell Douglas[2] burden-shifting framework. See, e.g., Orr v. City of Albuquerque, 417 F.3d 1144, 1149 (10th Cir. 2005).

Under this framework, the plaintiff bears the initial burden to establish a prima facie case of discrimination by a preponderance of the evidence. EEOC v. Horizon/CMS Healthcare Corp., 220 F.3d 1184, 1191 (10th Cir. 2000). If she does so, the defendant must "articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." Id. At that point, "the plaintiff can avoid summary judgment only if she can show that her pregnancy was a determinative factor in the defendant's employment decision, or show the defendant's explanation for its action was merely pretext." Id. (quotation omitted).

_____

[2] McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

4

There is no dispute that Jackson made out a prima facie case of pregnancy discrimination. However, Simplot proffered a legitimate, nondiscriminatory reason for refusing to allow Jackson to return to work: there was no position available that met the chemical restriction imposed by her doctor. Jackson contends that the district court erred in finding that Simplot provided a legitimate, nondiscriminatory justification for its actions because it impermissibly construed the doctor's letters as imposing a blanket chemical restriction. She argues the letters should be interpreted in her favor to say that she had no meaningful chemical restriction that would prevent her from performing the Operator job.

But Simplot's burden was one of production, not persuasion; its burden was to "articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." Id. Viewed in the light most favorable to Jackson, the doctor's letters prior to February 28 are at best equivocal about the level of chemical exposure for which she was authorized. The doctor repeatedly stated that Jackson could accommodate only typical, daily exposure to the specified chemicals—not exposure to potentially harmful chemicals. He also recommended light duty office work. Further, Jackson noted in a written statement on February 6, 2014, that she understood her doctor to say she could not be exposed to three chemicals present at her job. Given that Jackson herself interpreted her doctor's letters to mean she could not return to her Operator position until after February 28, we conclude Simplot met its burden by stating that it did not allow Jackson to work in the only positions

5

available because they would have exposed her to chemicals, contrary to her doctor's recommendations.

At this point in the McDonnell Douglas framework, the burden shifts to Jackson to show either that her pregnancy was a determinative factor in Simplot's adverse employment action or that Simplot's explanation for its action was merely pretext. "Pretext can be inferred from evidence revealing weaknesses, implausibilies, inconsistencies, incoherencies, or contradictions in the employer's explanation." Lounds v. Lincare, Inc., 812 F.3d 1208, 1234 (10th Cir. 2015) (quotation omitted). In addition, pretext may be demonstrated "by providing direct evidence discrediting the proffered rationale, or by showing that the plaintiff was treated differently from others similarly situated." Id. (quotation omitted). The essential inquiry is "whether a reasonable factfinder could rationally find the employer's rationale unworthy of credence and hence infer that the employer did not act for the asserted non-retaliatory reasons." Id. (brackets and quotation omitted).

Jackson relies primarily on her doctor's letters to establish pretext, claiming they did not impose any relevant restriction on chemical exposure. However, as discussed above, the letters prior to February 28 did not clearly state that Jackson was cleared to work as an Operator.[3] Jackson also points to an affidavit from her doctor that was prepared during litigation, in which he states that he did not mean to impose

---

[3] Jackson argues that in the January 31 letter, the doctor referred to the Operator position. She relies on an email indicating that the Operator job description was sent to the doctor on January 7, 2014. But this circumstance does not cast doubt on the evidence that the doctor was referring to the Administrative job description sent with his January 31 letter.

a specific chemical exposure restriction in the letters. But even if Jackson and her doctor interpreted the earlier letters to mean she could return to work, "we examine the facts as they appear to the person making the decision; we do not look to the plaintiff's subjective evaluation of the situation" in determining pretext. EEOC v. C.R. England, Inc., 644 F.3d 1028, 1044 (10th Cir. 2011) (citation, quotation, and emphasis omitted). Jackson has not adduced evidence to refute Simplot's view that her doctor's letters limited her chemical exposure to such an extent that she was not qualified to return to the Operator position.

Jackson also argues pretext because Simplot's representative, Allen, merely assumed that chemical levels were too high for a pregnant woman. Allen testified that she did not know the chemical levels at any given time because the levels fluctuated daily. However, given the doctor's lack of specificity as to the level of chemicals Jackson could tolerate, and his consistent recommendation that she be given light duty office work, Allen's inability to specify the chemical levels on any given day does not undermine Simplot's proffered legitimate, nondiscriminatory reason for the adverse employment action.

As to her claim that Simplot treated her differently from other employees who were similar in their ability to work, Jackson contends that Simplot acted contrary to established practice for accommodating employees. She contends that five employees were accommodated with light duty when they were unable to meet the lifting requirements of their jobs. But Jackson was also placed on light duty status in the fall of 2013, when her doctor restricted her lifting ability. There is no evidence

7

that any of the other employees' doctors recommended limiting exposure to chemicals, thus those employees were not similar to Jackson in their ability to work.

Finally, Jackson asserts that despite an established practice of checking with six department heads regarding accommodations for an employee, Simplot consulted with only two department heads to find her a suitable position. "It is true that a failure to follow company policy can support a finding of pretext in some circumstances." C.R. England, Inc., 644 F.3d at 1045 (emphasis omitted). But the evidence on which Jackson relies does not substantiate her claim. Allen testified that she would "talk to the department heads" to determine whether a position was available, and that there had been a meeting to discuss Jackson's situation attended by the plant manager, two department heads, and herself (she could not remember who else was present). Allen also could not remember how many department heads she spoke with. This record does not evince a policy of checking with six department heads regarding accommodations.

### III

We **AFFIRM** the district court's grant of summary judgment.

Entered for the Court

Carlos F. Lucero
Circuit Judge

8