**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 17 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PATRICIA ANN GRIFFIS,

      Plaintiff-Appellant,

v.

THE CITY OF NORMAN, a municipal corporation,

      Defendant-Appellee.

No. 99-6420
(D.C. No. 99-CV-185-W)
(W.D. Okla.)

**ORDER AND JUDGMENT** *

Before **BALDOCK** , **KELLY** , and **HENRY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Patricia Ann Griffis appeals from the district court's order granting summary judgment in favor of defendant, the City of Norman, Oklahoma (City), in her action claiming the City failed to promote her on the basis of race in violation of Title VII and 42 U.S.C. § 1981. Because the record indicates that Ms. Griffis made a prima facie showing under Title VII and offered sufficient evidence of pretext to create a genuine dispute of material fact as to the validity of the City's articulated reason for not promoting her, we reverse.

I. Background

A. The Promotion Decision

Plaintiff, a black female, began her employment with the City's Police Department in 1988. Prior to 1988, Ms. Griffis worked in the Pittsburgh County, Oklahoma Sheriff's office for sixteen years. There, she was the undersheriff matron, the highest office position under the Sheriff, and had both dispatch and record keeping responsibilities. While employed with the City, she initially worked as a dispatcher for several months. The City transferred her to the records department, however, because white police officers complained they could not understand her because she had the "accent" of a black person and did not have a "radio voice." *See* Appellant's App. at 45, 116. Ms. Griffis then worked as a records clerk from 1989 to July 1996, where she was supervised by Kim Isaac (Isaac), who held the position of Communications/Records Supervisor.

Ms. Griffis assumed Isaac's responsibilities as Communications/Records Supervisor whenever Isaac was absent due to illness or vacation, and twice for several months while Isaac was on maternity leaves. Ms. Griffis received accommodations for her performance in filling in for Isaacs and was told she should be considered for a promotion whenever the opportunity arose. In January 1996, Isaac evaluated Ms. Griffis' performance as exceeding expectations in nearly all performance factors. Isaac commended Ms. Griffis in particular for her excellence in training new employees and for being a dependable, hard-working employee.

In July 1996, Ms. Griffis applied for the position of Communications/Records Supervisor, being vacated by Isaac. The hiring decision was made by a five member, all-white, interview board which reviewed the applicants' written applications and conducted oral interviews. The hiring decision was based on subjective scores given to each applicant by each board member during the oral interview. Each board member scored a white applicant, Shawn Bell (Bell), the highest, and, based on these scores, Bell was promoted to Communications/Records Supervisor. The board scored Ms. Griffis as the second-highest applicant. Bell had worked for the City for only five months and was a probationary employee being trained as a records clerk. Prior to her

employment with the City, Bell had worked for sixteen months as a dispatcher and jailer with the Wagoner County, Oklahoma Sheriff's office.

## B. Ms. Griffis' Grievance

Ms. Griffis filed a grievance with the City on July 30, 1996, claiming that the selection process had not been fair or consistent with City guidelines, and that the interview board had not taken into consideration her qualifications, evaluations and performance. The City's Personnel Director, George Shirley (Shirley) reviewed the promotion decision during the first week of August 1996. He concluded that Ms. Griffis was more qualified than Bell and, indeed, was the best qualified applicant for the promotion. Shirley concluded that the decision to promote Bell over Ms. Griffis was based on racial discrimination because, given the relevant qualifications of Ms. Griffis and Bell, there was no other explanation for the decision. He explained:

> [T]here's no way you can consider a probationary employee without management experience over someone who's worked for you for seven years, seven and a half years, and they've already proven that they can handle the job by filling in for supervisors when they were absent.
>
> And so -- and I took that to mean that there was some reason other than her qualifications that actually caused the decision to be made. . . . [I]t wasn't [ ] female, it wasn't sex, because both of them were females, and it had to be based on race.

Appellant's App. at 135 (Shirley deposition).

Shirley, who is also black, immediately told one of the City's assistant attorneys, Jeff Bryant (Bryant) of his conclusion that race discrimination had been involved in the decision not to promote Ms. Griffis. According to Shirley's deposition testimony, Bryant told Shirley he "needed to help him justify the [Police] chief's decision." *Id*. Shirley refused, telling Bryant he was not going to be part of a decision that he believed to be discriminatory. *See id*. According to Shirley, Bryant then told him he needed to reconsider that decision because it would have an effect on his future employment with the City. *See id*. Several days later, Bryant asked Shirley if he had reconsidered his decision. Shirley told him he was not going to reconsider because he felt the promotion decision "was a blatant act of discrimination." *Id*. at 136.

On August 21, 1996, the City's Chief of Police, Phil Cotton (Cotton), denied Ms. Griffis' grievance. He stated that each board member independently scored Bell higher than Ms. Griffis. He stated that the questions asked during the oral interview covered a wide variety of topics, including education, training, experience, communication skills, interpersonal relations, problem solving skills, personal characteristics and overall suitability for the position. Cotton stated that although Ms. Griffis had more years of experience than Bell, Ms. Griffis had "performance deficiencies" as a dispatcher, whereas Bell had experience as

a dispatcher. *Id.* at 45. Cotton concluded that the scores were reasonable, and he found nothing in the process to show bias.

Ms. Griffis appealed Cotton's denial of her grievance to the City Manager, Ron Wood (Wood). Wood asked the City's Personnel Department to evaluate the selection process used for the promotion. Wood, Shirley, Bryant and Cotton then met to discuss Ms. Griffis' grievance. Shirley reported that the Personnel Department had concluded that the City did not use the same factors in selecting Bell as it had used to fill the same supervisory position in January 1996. In the case of the Bell promotion, the City had not done any background investigation of the applicants, even though the City's Personnel Manual called for such an investigation, and the City had always performed a background investigation in connection with past promotions, even when the applicants were already City employees. The Personnel Department conducted a background investigation of Bell, and reported to Wood that her application for the Communications/Records Supervisor position misstated that she had previous managerial experience.

At the meeting, Wood asked what would happen if he rescinded Bell's promotion and placed Ms. Griffis in the Communications/Records Supervisor position. Bryant told Wood that such action would subject the City to a reverse discrimination claim by Bell. *See id.* at 138. Wood then ordered that an entirely

-6-

new selection procedure be adopted by the City, and that all the applicants reapply for the promotion using the new procedure.

Several days after this meeting, Personnel Department employees reported to Shirley that Bryant had approached them and asked them to find information to justify accusing Shirley of sexual harassment. In October 1996, Wood informed Shirley that employees had filed sexual harassment charges against him, and suspended him from employment during the investigation. Shirley eventually filed a complaint with the Equal Employment Opportunity Commission (EEOC). The EEOC determined that the City had retaliated against Shirley because he objected to the Bell promotion and contended that the City's decision not to promote Ms. Griffis had been based on racial discrimination.

A new evaluation of Ms. Griffis' job performance was prepared by Isaac and dated September 3, 1996. The City admits that Ms. Griffis' signature on this new evaluation was forged, and that, contrary to City procedure, Ms. Griffis was not shown a copy of this evaluation. The new evaluation gave Ms. Griffis lower marks on many performance criteria, including training and overseeing personnel, than she received on her January 1996 evaluation, and Ms. Griffis' overall performance rating was lowered from "exceeds" expectations in January 1996, to "meets" expectations on the new evaluation. Bell's July 1996 overall

performance rating was also listed as "meets" expectations, although she was ranked lower than Ms. Griffis in almost all areas of performance criteria.

The City adopted a completely revised selection process for the Communications/Records Supervisor position, including an essay and multiple-choice written examination and a detailed rating system for scoring answers during the oral interview. On November 6, 1996, the City sent a memorandum to Ms. Griffis acknowledging that "the procedures utilized [in the July promotion decision] did not adequately test the skills of all the applicants," and that "a more comprehensive process could have and should have been conducted" during the original selection process. *Id*. at 64. The City rescinded Bell's promotion, and allowed all of the original applicants to reapply under the new selection process. Ms. Griffis did not reapply, stating that "the inconsistency in the selection process, and Mr. Wood's decision to altar (sic) the testing at this time shows a pattern of discrimination." Appellee's Supp. App. at 1.

The district court entered summary judgment in favor of the City on Ms. Griffis' claims, holding that the evidence presented could not persuade a reasonable jury that the City had intentionally discriminated against her.

## II.  Analysis

### A.  Standard of Review

"We review the district court's grant of summary judgment de novo, applying the same legal standard as the court below."  *Munoz v. St. Mary-Corwin Hosp*., 221 F.3d 1160, 1164 (10th Cir. 2000).  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "In applying this standard, we examine the factual record and draw reasonable inferences therefrom in a light most favorable to the nonmoving party."  *Munoz*, 221 F.3d at 1164.

### B.  Direct Evidence

A plaintiff alleging racial discrimination in violation of Title VII or § 1981 "may prove intentional discrimination through either direct evidence of discrimination (e.g., oral or written statements on the part of a defendant showing a discriminatory motivation) or indirect (i.e., circumstantial) evidence of discrimination."  *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).  Ms. Griffis contends the comment from Bryant to Wood that the City would be subject to a reverse race discrimination lawsuit if it rescinded Bell's promotion and gave the promotion to Ms. Griffis constitutes direct

evidence of intentional discrimination. She argues that once the City learned that no background investigations of the applicants had been done and that Bell had misstated her managerial experience on her application for the promotion, she would have been promoted based on her second-highest ranking by the interview board had she not been a member of a protected class.

"A plaintiff proves discrimination through direct evidence by establishing proof of 'an existing policy which itself constitutes discrimination.'" *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir.) (quoting *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990)), *cert. denied*, ___ S. Ct. ___, No. 00-95, 2000 WL 1056492 (Oct. 2, 2000). "'Statements which on their face are expressions of personal opinion, however, can only support an inference of discrimination if the trier of fact finds the inference reasonable, and so constitute only circumstantial or indirect evidence of discrimination against the plaintiff.'" *Id*. (quoting *Tomsic v. State Farm Mut. Auto. Ins. Co.*, 85 F.3d 1472, 1477 (10th Cir. 1996)). We agree with the district court that Bryant's comment was merely an expression of his personal opinion and does not constitute direct evidence of intentional discrimination. *See id*. at 1136-37 (citing cases). Even though Bryant's recommendation was considered in the City's decision not to promote Ms. Griffis following the background investigation of Bell, his comments do not represent an existing City policy which itself constitutes

discrimination. *See Tomsic* , 85 F.3d at 1477, 1478. As discussed below, however, the district court erred in ignoring this comment as indirect, or circumstantial, evidence of intentional discrimination.

## C. Circumstantial Evidence

A plaintiff relying on indirect evidence employs the three-step analytical framework first articulated in *McDonnell Douglas Corp. v. Green* , 411 U.S. 792 (1973). *See Kendrick* , 220 F.3d at 1226. "Under the *McDonnell Douglas* framework, the plaintiff 'must carry the initial burden under the statute of establishing a prima facie case of racial discrimination.'" *Id*. (quoting *McDonnell Douglas* , 411 U.S. at 802). "Once the plaintiff has established a prima facie case, '[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its employment action." *Id*. (quoting *McDonnell Douglas* , 411 U.S. at 802). "If the defendant makes this showing, the plaintiff must then show that the defendant's justification is pretextual." *Id*.

## 1. Prima Facie Case

The City's appellate brief does not refer to, or apply, the *McDonnell Douglas* analysis. It does not dispute that Ms. Griffis has established a prima facie case of race discrimination, and, based on our review of the record, we conclude that Ms. Griffis has satisfied her burden: (i) she is a member of the class protected; (ii) she applied for and was qualified for the position of

Communications/Records Supervisor; (iii) despite being qualified, she was rejected; and (iv) after she was rejected, the position was filled. *See Kendrick*, 220 F.3d at 1226; *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1195 n.6 (10th Cir. 2000).

### 2. Legitimate, Nondiscriminatory Explanation

The City does not articulate on appeal what it claims to have been its legitimate, nondiscriminatory reason for passing over Ms. Griffis for promotion. Before the district court, the City argued that its justification for not promoting Ms. Griffis was the fact that each member of the interview board separately ranked Ms. Griffis second to Bell. This reason is sufficient to satisfy its second-stage burden. *See EEOC v. Flasher Co.*, 986 F.2d 1312, 1316 (10th Cir. 1992) (defendant need only articulate through some proof a facially nondiscriminatory reason; it need not litigate the merits of the reasoning at this stage of the proceeding).

The City repeatedly states in its appellate brief that Ms. Griffis was not qualified to do the job of Communications/Record Supervisor because she could not do the job of dispatcher, and, therefore, could not supervise employees in the Communications Department. *See* Appellee's Br. at 1, 3, 5, 7. The City does not

explain how it believes this factor affects the *McDonnell Douglas* analysis. [1]

Even more significantly, the City fails to disclose in its brief the undisputed evidence that Ms. Griffis was asked to transfer out of her dispatcher job because white officers complained they could not understand her because she had the "accent" of a black person. The City presented no evidence that Ms. Griffis' "black accent" would interfere with her ability to perform the duties of Communications/Records Supervisor, and its explanation fails to qualify as a legitimate, nondiscriminatory reason for failing to promote Ms. Griffis to a supervisory job. *See Flasher*, 986 F.2d at 1317 (defendant must "explain its actions against the plaintiff in terms that are not facially prohibited by Title VII.").

### 3. Evidence of Pretext

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to

---

[1] We presume the City is not advancing this argument in an attempt to defeat Ms. Griffis' prima facie case because it is well established that an employer may not "short circuit" the *McDonnell Douglas* analysis by challenging a Title VII plaintiff's qualifications at the prima facie stage. *See Horizon/CMS Healthcare*, 220 F.3d at 1193, 1195 n.7; *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470 (10th Cir. 1992). An employer's subjective reasons for not promoting a plaintiff may not be considered at the prima facie stage of the *McDonnell Douglas* analysis; to meet the prima facie case, plaintiff need only present some credible evidence, including her own testimony, that she was minimally qualified to perform the position sought. *See Horizon/CMS Healthcare*, 220 F.3d at 1192-94; *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1316 n.11 (10th Cir. 1999).

conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2109 (2000); *see also Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995). A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotation omitted).

> [T]he evidence which a plaintiff can present in an attempt to establish that a defendant's stated reasons are pretextual may take a variety of forms. . . . A plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual. A plaintiff typically makes a showing of pretext in one of three ways: (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.

*Kendrick*, 220 F.3d at 1230 (citations, quotation and alterations omitted).

On appeal, Ms. Griffis contends the district court erroneously ignored her evidence of pretext and intentional discrimination and failed to view the evidence in a light most favorable to her, as it is obligated to do under Rule 56. We agree that the district court disregarded evidence favorable to Ms. Griffis and failed to draw all inferences in her favor.

In rejecting her claims of pretext, the district court stated that Ms. Griffis "presented no evidence to challenge the scores she received from the interviewers." Appellant's App. at 207. The district court ignored the evidence that Ms. Griffis was, in fact, more qualified for the promotion than Bell. Ms. Griffis, who had twenty-one years more experience than Bell, presented more than her own opinion of her qualifications: she presented the testimony of the City's Personnel Director, who reviewed all of the applications and concluded that Ms. Griffis was the most qualified applicant for the promotion, was more qualified than Bell in particular, and had performed the responsibilities of Communications/Records Supervisor with commendations. "When an employer contends that a [Title VII] plaintiff was not as qualified as the successful candidates, pretext can be inferred from evidence that a plaintiff was in fact *more qualified than those chosen*." *Martinez v. Wyoming, Dep't of Family Servs.*, 218 F.3d 1133, 1139 (10th Cir. 2000) (citing *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir. 1994)); *see also Durham v. Xerox Corp.*, 18 F.3d 836, 839 (10th Cir. 1994) ("[P]roof that [plaintiff] was more qualified would disprove [the employer's] only explanation for its actions, that [plaintiff] was less qualified than the successful candidates.").

The district court also ignored the evidence that the reason given by the City to explain why the interview board scored Ms. Griffis lower than Bell--her

"performance deficiencies" as a dispatcher--is itself indirect evidence of intentional discrimination. [2] The City's reliance on Ms. Griffis' black "accent" for not promoting her creates an inference of intentional discrimination because the City made no showing that these claimed language difficulties would interfere with her duties as a Communications/Records Supervisor. *See Carino v. University of Okla. Bd. of Regents*, 750 F.2d 815, 819 (10th Cir. 1984) (holding that comments regarding a plaintiff's accent may constitute indirect evidence of discrimination where there is no showing that language difficulties would interfere with a plaintiff's ability to perform the duties of the job). Indeed, Ms. Griffis presented undisputed evidence that she was able to perform the responsibilities of Communications/Records Supervisor, with commendations, whenever her supervisor was on maternity leave or out of the office. This evidence undercuts the City's proffered explanation that Ms. Griffis' alleged communication deficiencies caused her to be scored as less qualified than Bell. *See Reeves*, 120 S. Ct. at 2109 (holding that "a prima facie case and sufficient

---

[2] We note that there is no evidence that the subjective scoring by the interview board members had any objective component. The use of subjectivity in the decision-making process can create a "strong" inference of bias if the plaintiff shows a "significant disparity" in the representation of a particular group. *Bauer v. Bailar*, 647 F.2d 1037, 1045 (10th Cir. 1981). Although no evidence was presented in this case to show whether blacks are significantly underrepresented in supervisory positions in the City, the presence of subjective decision making provides an opportunity for unlawful discrimination. *See id*. at 1046.

-16-

evidence to reject the employer's explanation may permit a finding of liability");

*cf. Fragante v. City & County of Honolulu*, 888 F.2d 591, 596 (9th Cir. 1989)

("Accent and national origin are obviously inextricably intertwined in many cases

[and i]t would therefore be an easy refuge in this context for an employer

unlawfully discriminating against someone . . . to state falsely that it was not the

person's [protected status] that caused the employment or promotion problem but

the candidate's inability to measure up to the communications skills demanded by

the job.").

The district court also failed to draw all reasonable inferences in

Ms. Griffis' favor when it considered the City's admission that "the procedures

utilized [in the July promotion decision] did not adequately test the skills of all

the applicants," and that "a more comprehensive process could have and should

have been conducted" during the original selection process.  Appellant's App.

at 64.  The district court failed to recognize that the City has relied upon the

scores given during the original selection process as its asserted legitimate,

nondiscriminatory reason for not promoting Ms. Griffis.  This reliance is undercut

by its own admission that the interview board did not adequately test the skills of

the applicants.  *See Reeves*, 120 S. Ct. at 2108-09 ("[O]nce the employer's

justification has been eliminated, discrimination may well be the most likely

alternative explanation. . . .").  The City argues Ms. Griffis' claim must fail

because she did not have personal knowledge why the evidence of the City's new evaluation process could support a claim of discrimination. *See* Appellee's Br. at 2, 8, 18. This argument fails to recognize that the City's admission that the original selection process did not adequately assess the applicants' qualifications serves to eliminate its proffered justification for hiring Bell over Ms. Griffis. "[R]ejection of the defendant's proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination. . . ." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

The district court also ignored the evidence that, when presented with Shirley's conclusion that the promotion decision had been racially discriminatory, Bryant told Shirley he had to help the Police Chief justify the hiring decision, and threatened Shirley's future employment if he did not do so. A trier of fact may infer from this evidence that the City was attempting to cover-up a discriminatory reason for passing over Ms. Griffis for promotion by manufacturing a facially nondiscriminatory justification. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." *Id.*

Moreover, this evidence, coupled with the evidence of retaliation against Shirley when he challenged the City's failure to promote Ms. Griffis because he

believed it to be racially discriminatory, is evidence of a pattern of discrimination by the City against minorities. An employer's reaction to a Title VII plaintiff's civil rights activities and its general policy and practice with respect to minority employment is evidence relevant to a showing of pretext. *See McDonnell Douglas*, 411 U.S. at 804-05. In this regard, the district court also failed to consider the evidence that Isaac lowered Ms. Griffis' evaluation after she filed her grievance; that she failed to show the evaluation to her, contrary to City policy; and that someone forged her signature on the evaluation. The City claims this evidence is not relevant because it occurred two months after Ms. Griffis was passed over for the promotion. This evidence is relevant, however, to the City's reaction to Ms. Griffis' grievance, and a trier of fact may infer from this forged evaluation that the City's proffered reason for not promoting Ms. Griffis was a pretext. *See Shaw v. HCA Health Servs. of Midwest, Inc.*, 79 F.3d 99, 100 (8th Cir. 1996) (where plaintiff made out a prima facie case and there was evidence that defendant had altered performance evaluations of plaintiff after firing him, "jury was entitled (although not required) to conclude . . . that the reasons given by the hospital for firing [plaintiff] were a pretext for age discrimination."). Moreover, given that Ms. Griffis' evaluation was lowered to equal Bell's evaluation, and that she was denied knowledge of and opportunity to respond to the lower evaluation, a trier of fact could infer that Ms. Griffis'

-19-

evaluation was manipulated or falsified to be used in the new selection process once the City decided that the applicants should reapply for the promotion. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1168 (10th Cir. 1998) (holding that a plaintiff can present evidence that her evaluation was deliberately falsified or manipulated to adversely alter her employment status). The City did present evidence that the lowered evaluation was actually Isaac's opinion of Ms. Griffis' performance. However, Ms. Griffis is entitled to have the court draw all reasonable inferences from the forged evaluation in her favor.

Finally, the district court also failed to consider as indirect evidence of discrimination the discussion between Bryant and Wood that the City would be subject to a reverse race discrimination lawsuit if it rescinded Bell's promotion and placed Ms. Griffis in the position. When the City ultimately learned that Bell had misstated her managerial experience, it could have promoted Ms. Griffis as the next highest ranking candidate as scored by the interview board. A trier of fact could infer from the reverse discrimination discussion that the City chose not to do so because Ms. Griffis was black.

The City argues that Ms. Griffis' claim must fail because she lacks any personal knowledge or direct evidence that the interview board members conspired together to intentionally discriminate against her. *See* Appellee's Br. at 2, 9-10. The City's argument ignores the well-established law that a

-20-

plaintiff who lacks direct evidence of intentional discrimination may use the *McDonnell Douglas* burden-shifting analysis to demonstrate intentional discrimination because "there is rarely direct evidence of discrimination." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994).

Finally, the City repeatedly notes that Ms. Griffis did not reapply for the supervisory position after it adopted a new selection procedure. *See* Appellee's Br. at 2, 4, 8, 21. It does not articulate how it believes this fact affects Ms. Griffis' Title VII and § 1981 claim that the City's failure to promote her in July 1996, and later that fall when Bell's actual qualifications were revealed, was racially motivated. An employer defending a Title VII action may limit its damages by *unconditionally* offering the plaintiff the job she sought, *see Ford Motor Co. v. EEOC*, 458 U.S. 219, 232 (1982) (emphasis added), but no such unconditional offer has been made by the City in this case. Moreover, even if a Title VII plaintiff minimizes her damages "by accepting the defendant's unconditional offer, [s]he remains entitled to full compensation if [s]he wins [the] case." *Id*. at 233.

## III. Conclusion

We conclude that Ms. Griffis has presented a prima facie case of racial discrimination and sufficient evidence for a jury to conclude the City's reason for passing her up for promotion was pretextual. Accordingly, the judgment of the United States District Court for the Western District of Oklahoma is REVERSED, and the case is REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court

Robert H. Henry
Circuit Judge