**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SABRINA MARIE FREPPON,

      Plaintiff-Appellant,

v.

CITY OF CHANDLER; LT. STEVE
SIMON,

      Defendants-Appellees.

No. 12-6176
(D.C. No. 5:11-CV-00912-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

Plaintiff Sabrina Marie Freppon filed suit against her former employer, the

City of Chandler, Oklahoma (the City). She alleged gender/pregnancy discrimination

against the City in violation of Title VII because (1) it denied her request for a light

duty assignment to accommodate her pregnancy and forced her to take a twelve-week

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

unpaid leave of absence under the Family Medical Leave Act (FMLA), and (2) it terminated her from her job as a police officer. Ms. Freppon also alleged that the City retaliated against her in violation of Title VII because she complained to the Chief of Police, Matt Mattheyer, that male police officers had been allowed to modify their work duties when they were temporarily unable to perform all of their normal duties. Finally, Ms. Freppon asserted claims under Oklahoma law against the City and Lt. Steve Simon. The district court entered summary judgment in favor of the City on Ms. Freppon's Title VII claims and declined to exercise supplemental jurisdiction over her state law claims.[1] We have jurisdiction under 28 U.S.C. § 1291. We remand Ms. Freppon's termination claim to the district court with instructions to dismiss it for lack of subject matter jurisdiction. We affirm the grant of summary judgment as to her remaining Title VII claims.

## I. BACKGROUND

A.    *Factual History*[2]

After working as a dispatcher for the City for several months, Ms. Freppon began working for the City as a police officer in January 2009. At that time and

---

[1] The district court dismissed Ms. Freppon's state law claims without prejudice. Because Ms. Freppon has not challenged the district court's refusal to exercise supplemental jurisdiction over her state law claims, we do not need to address them. *See Phillips v. Humble*, 587 F.3d 1267, 1274 (10th Cir. 2009).

[2] We recite the facts in this case as we must view them: in the light most favorable to the party opposing summary judgment. *See Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1204 (10th Cir. 2011).

continuing through the events at issue in this case, Ms. Freppon was the only female police officer in the Chandler Police Department. There were six male officers in the department.

Ms. Freppon sustained a foot injury while off duty in June 2010 and was off work for approximately four weeks. Toward the end of the four weeks, Ms. Freppon's doctor released her to return to work as a police officer with a "light duty" restriction. However, when Ms. Freppon asked Chief Mattheyer if she could be placed on "light duty" until she fully recovered from the injury, he told her that the Chandler Police Department did not have any light duty for her. *See* Aplt. App. at 76-77 (Depo. Pages 49-51).

In early August 2010, Ms. Freppon informed Chief Mattheyer that she was pregnant. On October 15, 2010, Ms. Freppon gave Chief Mattheyer a note from her doctor, which stated: "Sabrina is pregnant & shouldn't be doing heavy physical work. She may do desk/clerical work (light duty)." Aplt. App. at 157. Chief Mattheyer told Ms. Freppon that he needed to talk with James Melson, the City Manager. *Id.* at 77 (Depo. Pages 51-52). After speaking with Mr. Melson, Chief Mattheyer told Ms. Freppon that there was no light duty available. *Id.* at 77 (Depo. Page 52), 83-84 (Depo. Pages 77-78). Ms. Freppon then complained to Chief Mattheyer that other male officers had received light duty assignments in the past. *Id.* at 77 (Depo. Page 52), 84 (Depo. Page 78), 91 (Depo. Pages 108-09). Chief

Mattheyer told Ms. Freppon that the other officers had received light duty assignments because "theirs were on-the-job injuries." *Id.* at 77 (Depo. Page 52).

On October 18, 2010, the City placed Ms. Freppon on involuntary unpaid FMLA leave. *Id.* at 7 (¶ 8), 20 (¶ 8), 83 (Depo. Pages 74-77), 158-59. The FMLA paperwork that Ms. Freppon received stated that she had "a right under the FMLA for up to 12 weeks of unpaid leave." *Id.* at 159.

On October 21, 2010, Ms. Freppon's attorney sent a letter to Chief Mattheyer requesting that Ms. Freppon be given a light duty assignment due to her pregnancy. *Id.* at 160. The letter stated that "[s]ince the department has provided light duty assignments to male officers with temporary physical limitations, that same opportunity must be provided to female officers as well – and specifically to Ms. Freppon." *Id.*

On November 19, 2010, an attorney retained by the City sent a letter to Ms. Freppon's attorney. The letter stated as follows:

> The City of Chandler has requested that my office respond to your letter to the City on behalf of Chandler Police Officer Sabrina Freppon requesting that Ofc. Freppon be provided a light duty assignment due to her pregnancy. Your letter advises that Ofc. Freppon is entitled to a light duty assignment because she alleges that the City previously provided light duty assignments to male officers.
>
> To its knowledge, the City of Chandler has never provided a light duty assignment to a Police Officer for a non-work related illness/injury/condition which prevented the officer from performing his/her essential job functions. The prior Police Chief had, on two occasions, modified an officer's duties as a result of the officer's inability to perform all of their job duties due to restrictions associated with a work related injury. In both instances, the Officer was

- 4 -

performing essential job duties associated with their position while on the modified assignment. Further, in both instances the modified duties were for a limited period of time. Finally, following the most recent instance in which a modified work schedule was permitted, a decision was made by the City and current Chief Mattheyer to discontinue offering any form of light or limited duty to Chandler Police Officers who are unable to perform all their essential duties due to a work related injury. Ofc. Freppon was advised of this decision by Chief Mattheyer in July of this year, when she requested light duty as a result of a non-work related injury she suffered, and was denied.

Based on the City's prior decision to eliminate light/limited duty in the Police Department, your client's request is denied. Further, as it relates to the contention that the City is obligated to provide your client with a light duty assignment because of prior modified duty assignments which were provided to male officers, your client's situation is not comparable. Your client's condition is not work related. The City's understanding of your client's request is that she is requesting to be allowed to perform duties which are not essential duties of her position as a Police Officer. Finally, the requested light duty assignment would be for a far greater period of time than was provide[d] in the prior instances. Based on this understanding, the City cannot grant your client's request for a light duty assignment.

*Id.* at 161-62.

On January 31, 2011, the City's attorney sent another letter to Ms. Freppon's attorney, stating the following:

As you are aware, Ms. Freppon provided the City with documentation from her treating physician indicating that, due to her pregnancy, she was unable to perform certain essential functions of her position as a Patrol Officer with the Chandler Police Department. Upon receiving this documentation, the City of Chandler provided Ms. Freppon with the necessary FMLA paperwork pertaining to her extended absence from duty. The twelve (12) weeks has now expired.

The City has recently received information from the Oklahoma Employment Security Commission indicating that your client has advised the State that she is no longer employed by the City of Chandler. To date, the City has not involuntarily separated

- 5 -

Ms. Freppon's employment and has further received no paperwork from Ms. Freppon indicating that she is voluntarily separating her employment. Please advise regarding your position as to Ms. Freppon's employment status with the City. . . .

   To insure the interests of all involved are protected, the City is requesting a response by February 11, 2011.

*Id.* at 315.

   Finally, on March 28, 2011, James Melson, the City Manager, sent a letter to

Ms. Freppon regarding "Notice of Separation." *Id.* at 163. The letter read as

follows:

   As you are aware, you have been unable to report for duty for quite some time. The City received a letter from an attorney . . . indicating that you believed you were being discriminated against on the basis of your gender. The City denied that allegation. Thereafter, the City received a notice that you had advised the State (OESC) that your employment with the City had been separated. The City, through its legal counsel, contacted your attorney at the end of January, 2011, asking for your position regarding whether you believed you were still employed despite the OESC filing. This inquiry was made since the City had not separated your employment and had received no direct notice from you that you were separating your employment. The City was thus left to conclude that you had voluntarily separated your employment based on your OESC filing. Your attorney did not respond in the time frame set forth in the City's letter. Several attempts were made to contact your attorney by telephone, but none was successful.

   In light of your counsel's failure to respond to the city refuting your assertion to the OESC that you were no longer employed, the City is left to conclude that you have indeed separated your employment. Consequently, a notation to that effect will be made in your file. Your health insurance will continue through the close of the month. You will receive paperwork from the City indicating your right to continue that health insurance, as well as other procedural issues. Should you have any City property in your possession, please arrange with Chief Mattheyer to return that property (e.g. badge, commission card,

uniform, etc.).  If any of your personal property is located at the City, Chief Mattheyer can arrange for its return.

*Id.* at 163.

According to Ms. Freppon, in May 2011, following the birth of her baby, her "doctor released her to return to full duty without restrictions." *Id.* at 8.  She then attempted to return to her employment with the City's police department, but "she was told that her employment was terminated." *Id.*

B.    ***Procedural History***

Ms. Freppon subsequently filed a complaint against the City in federal district court.  In June 2012, the district court entered summary judgment in favor of the City on Ms. Freppon's Title VII pregnancy discrimination and retaliation claims.  In doing so, the district court correctly recognized that Ms. Freppon asserted two distinct pregnancy discrimination claims.  First, Ms. Freppon claimed that the City discriminated against her when it denied her request for a light duty assignment and forced her to take a twelve-week unpaid leave of absence under FMLA.  Second, Ms. Freppon claimed that the City discriminated against her when it terminated her. The district court also correctly recognized that Ms. Freppon alleged that she was subjected to two separate adverse employment actions in retaliation for her complaint to Chief Mattheyer concerning his denial of her request for a light duty assignment. The alleged adverse actions were (1) the City denied her access to the gun range on

one occasion, *id.* at 358-59; and (2) the City forced her to take twelve weeks of

unpaid FMLA leave, *id.* at 359.[3]

## II. **DISCUSSION**

### A. *Termination Claim and Administrative Exhaustion*

Following a limited remand for the district court to make findings concerning

whether Ms. Freppon administratively exhausted her pregnancy discrimination claim

related to her termination, the district court determined that Ms. Freppon failed to

exhaust her wrongful termination claim.  The court noted that Ms. Freppon filed an

administrative charge with the Equal Employment Opportunity Commission for

gender/pregnancy discrimination and retaliation in November 2010.[4]  Several months

---

[3] In both her complaint and her response to the City's motion for summary judgment, Ms. Freppon limited her Title VII retaliation claim to the City's actions of denying her access to the gun range and forcing her to take FMLA leave.  *See* Aplt. App. at 10, 193-96.  Although Ms. Freppon argues in conclusory fashion in her opening brief that "she was terminated because of her gender or recent pregnancy or in retaliation for seeking light-duty," Aplt. Opening Br. at 24, we conclude that Ms. Freppon failed to preserve a retaliation claim based on her termination in the district court proceedings.  *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal.").  And even if she did preserve such a claim, she has inadequately briefed it in her opening brief.  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").  Consequently, we will not address a retaliatory termination claim.

[4] In her administrative charge, Ms. Freppon alleged that the City discriminated and retaliated against her in October 2010 when it denied her request for a light duty assignment and forced her to take FMLA leave.  *See* Aplt. App. at 319.  The EEOC dismissed the charge and issued right-to-sue letter to Ms. Freppon in May 2011.

(continued)

later, in March 2011, the City Manager sent Ms. Freppon the "Notice of Separation" terminating her employment, but she never filed another charge with the EEOC related to her termination. Because the district court determined that Ms. Freppon's termination was a discrete employment action that had to be separately exhausted, the court concluded that it lacked subject matter jurisdiction over Ms. Freppon's wrongful termination claim. *See Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) ("Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII.") (internal quotation marks omitted).

We review the district court's exhaustion findings de novo. *Id.* at 1399-1400. Having conducted the required de novo review, we agree with the district court's analysis. As a result, we must dismiss Ms. Freppon's wrongful termination claim for lack of subject matter jurisdiction. *Id.* at 1399; *see also Joslin v. Sec'y of Dep't of Treasury*, 832 F.2d 132, 134 (10th Cir. 1987) ("[T]he question of a district court's subject matter jurisdiction may be raised for the first time on appeal.").

As the district court correctly recognized, the exhaustion issue is controlled by our decision in *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003). The plaintiff in *Martinez* filed a formal EEO complaint in July 1999 in which he complained about

*Id.* at 321. Because Ms. Freppon's administrative charge was timely filed and resulted in receipt of a right-to-sue letter, she properly exhausted her Title VII discrimination and retaliation claims related to the events that occurred in October 2010. *See Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). We therefore discuss the merits of those claims below.

retaliatory treatment that allegedly occurred in May 1999. In the subsequent litigation in federal district court, however, the plaintiff sought to litigate additional retaliation claims pertaining to a September 2000 reprimand and his termination in April 2001. Because the plaintiff never filed formal EEO complaints regarding the latter incidents, we concluded that the district court correctly determined that plaintiff had failed to exhaust his administrative remedies as to his additional retaliation claims. Our reasoning was quite different than the analysis of the district court, however, and we announced a fundamental change in this area of the law based on a recent Supreme Court decision:

> As to [plaintiff's allegations regarding the September 2000 reprimand and his termination in April 2001], the district court held that they could not proceed because they were not like or reasonably related to the allegations in Mr. Martinez's EEO complaint, and Mr. Martinez had failed to exhaust administrative remedies. In determining that Mr. Martinez was required to exhaust administrative remedies with regard to the September 2000 and April 2001 disciplinary actions the district court relied on our holdings in *Jones v. Denver Post Corp.*, 203 F.3d 748, 755 (10th Cir. 2000) and *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994). *See also Brown v. Hartshorne Pub. Sch. Dist.*, 864 F.2d 680, 682 (10th Cir. 1988). Those cases explain that "[w]hen an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *See Ingels*, 42 F.3d at 625 (quotation omitted).

> Although we agree with the district court that these claims were not properly before it, the Supreme Court's recent pronouncement in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 . . . (2002), has effected fundamental changes to the doctrine allowing administratively unexhausted claims in Title VII actions. We agree with the government that such unexhausted claims involving discrete

- 10 -

employment actions are no longer viable. *Morgan* abrogates the continuing violation doctrine as previously applied to claims of discriminatory or retaliatory actions by employers, and replaces it with the teaching that each discrete incident of such treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted. *Id.* at 110-13 . . . . "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114 . . . . In *Morgan*, this rule applied to bar a plaintiff from suing on claims for which no administrative remedy had been sought, when those incidents occurred more than 300 days *prior* to the filing of plaintiff's EEO complaint. The rule is equally applicable, however, to discrete claims based on incidents occurring *after* the filing of Plaintiff's EEO complaint. . . .

         . . . .

         The September 2000 and April 2001 disciplinary actions are clearly discrete and independent actions, though part of what Mr. Martinez must necessarily claim is a "continuing violation." Because the rule in *Morgan* requires a Title VII plaintiff to exhaust administrative remedies for each individual discriminatory or retaliatory act, and precludes reliance upon a continuing violation theory, we affirm the judgment of the district court.

*Martinez*, 347 F.3d at 1210-11 (second alteration in original).[5]

As the district court here found, it is undisputed that Ms. Freppon did not file a separate administrative charge after she was terminated from her employment with the City. Just like the plaintiff in *Martinez*, Ms. Freppon therefore failed to exhaust her wrongful termination claim, and we lack subject matter jurisdiction over the claim. In her supplemental briefs, however, Ms. Freppon claims that she meets an

---

[5] We note that the rule in *Morgan* does not apply to hostile work environment claims, and that the continuing violation doctrine therefore remains viable for such claims. However, Ms. Freppon has not asserted a hostile work environment claim.

- 11 -

exception to the exhaustion rule since her termination claim was "reasonably related" to her exhausted discrimination claim pertaining to the City's denial of her request for a light duty assignment and her involuntary FMLA leave. But in making this argument, Ms. Freppon relies on the very language and authorities that this court abrogated in *Martinez*. *See* Aplt. Supp. Opening Br. at 4-5; Aplt. Supp. Reply Br. at 4. In fact, she illogically argues that "[s]he is not claiming a 'continuing violation,' . . . but is asserting a claim that is 'reasonably related' and reasonably grows out of her filed EEOC charges." Aplt. Supp. Reply Br. at 4. This argument is unavailing, however, given that *Martinez* explicitly tied the "reasonably related" test to the abrogated continuing violation doctrine, as the above-quoted language from *Martinez* clearly demonstrates. As we have explained:

> Previously, we would proceed to examine whether the alleged employment action, provided it occurred after the filing of the EEOC charge, was "like or reasonably related to the allegations of the EEOC charge." *Ingels v. Thiokol Corp.*, 42 F.3d 616, 625 (10th Cir. 1994). However, our recent holding in *Martinez v. Potter*, 347 F.3d 1208 (10th Cir. 2003), has foreclosed this line of inquiry. In *Martinez*, we abrogated the continuing violation exception to our jurisdictional requirements . . . and held that "unexhausted claims involving discrete employment actions are no longer viable." *Id.* at 1210.

*Annett v. Univ. of Kan.*, 371 F.3d 1233, 1238 (10th Cir. 2004).

Ms. Freppon's additional arguments are also without merit. First, she argues that her "separation of employment was not a 'discrete incident'" because "her Notice of Separation read as if the City was accepting her resignation, even though no resignation had been tendered." Aplt. Supp. Opening Br. at 3. We agree with the

City that this is not a reasonable argument. To begin with, the March 28, 2011 "Notice of Separation" clearly indicated that Ms. Freppon's employment with the City had been terminated, as Ms. Freppon was informed that her health insurance would expire at the close of the month and was specifically instructed to return her "badge, commission card, [and] uniform." Aplt. App. at 163. In her opening merits brief, Ms. Freppon conceded this point, acknowledging that the March 28, 2011, letter "stated that Freppon's employment was terminated." Aplt. Opening Br. at 9. Further, Ms. Freppon alleged, in her complaint, that she attempted to return to her employment with the Police Department, but "she was told that her employment was terminated." Aplt. App. at 8. Thus, we conclude that Ms. Freppon was on notice, as of March 28, 2011, or shortly thereafter, that the City had terminated her employment.

Ms. Freppon next points out that her complaint against the City included a claim under Oklahoma law that she was wrongfully terminated in violation of Oklahoma public policy. Specifically, the complaint alleged that she was terminated in retaliation for exercising her statutory right under Oklahoma law to file for unemployment benefits. *Id.* at 10-11. Although Ms. Freppon is correct that this state law claim is not subject to Title VII's administrative exhaustion requirements, the district court declined to exercise supplemental jurisdiction over Ms. Freppon's state law claims, and it dismissed them without prejudice. *Id.* at 359-60, 361. Because Ms. Freppon has not challenged the district court's refusal to exercise supplemental

jurisdiction over her state law claims, we do not need to address them. *See Phillips v. Humble*, 587 F.3d 1267, 1274 (10th Cir. 2009).

In sum, we conclude that Ms. Freppon failed to administratively exhaust what might have been a meritorious wrongful termination claim. Accordingly, we must remand her termination claim to the district court with instructions to dismiss the claim for lack of subject matter jurisdiction.

B. ***Summary Judgment Rulings as to Remaining Title VII Claims***

We note that there are no administrative exhaustion issues regarding the remaining Title VII claims. We review the district court's decision to grant summary judgment as to those claims de novo. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013). We view the facts in the light most favorable to Ms. Freppon and draw all reasonable inferences in her favor. *Id.* "Summary judgment is appropriate only if the [City] shows that 'there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law.'" *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (citation omitted).

1. ***Pregnancy Discrimination Claim for Denial of Light Work and Forced FMLA Leave***

    a. **Legal Background**

"Title VII of the Civil Rights Act of 1964 prohibits, among other things, unlawful discrimination on the basis of an individual's sex." *Horizon/CMS Healthcare*, 220 F.3d at 1190; *see also* 42 U.S.C. § 2000e-2. "In 1976, the Supreme Court held that an employer's disability plan did not violate Title VII although it excluded pregnancy-related disabilities." *Horizon/CMS Healthcare*, 220 F.3d at 1190-91 (citing *Gen. Elec. Co. v. Gilbert*, 429 U.S. 125, 140-41 (1976)). "In response to *Gilbert*, Congress passed the Pregnancy Discrimination Act (PDA)." *Id.* at 1191. Pursuant to the PDA, the definitional section of Title VII was amended by adding the following language: "The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions . . . ." 42 U.S.C. § 2000e(k). "The section was added to Title VII to prevent the differential treatment of women in all aspects of employment based on the condition of pregnancy." *E.E.O.C. v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir. 1992) (internal quotation marks omitted).

"Claims brought under the PDA are analyzed in the same way as other Title VII claims . . . ." *Horizon/CMS Healthcare*, 220 F.3d at 1191. To obtain relief under Title VII, "a plaintiff must show, through either direct or indirect evidence, that the discrimination complained of was intentional. A plaintiff who lacks direct evidence

- 15 -

of intentional discrimination may use the burden-shifting framework first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 . . . (1973), to demonstrate intentional discrimination." *Horizon/CMS Healthcare*, 220 F.3d at 1191 (citation omitted). ).  Here, Ms. Freppon is not relying on direct evidence of discrimination, so the burden-shifting framework of *McDonnell Douglas* applies.

"Under *McDonnell Douglas*, a plaintiff carries the initial burden of establishing a prima facie case of discrimination," but "[t]he burden at this stage is not onerous." *Tabor*, 703 F.3d at 1216 (internal quotation marks omitted).  If a plaintiff states a prima facie case of discrimination, the burden shifts to the employer to proffer "a legitimate non-discriminatory reason for the adverse employment action." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 (10th Cir. 2005).  If the employer makes this offering in a pregnancy discrimination case, the plaintiff will avoid summary judgment only if she shows that her "pregnancy was a determinative factor in the . . . employment decision, or show[s] the [employer's] explanation for its action was merely pretext." *Horizon/CMS Healthcare*, 220 F.3d at 1191 (internal quotation marks omitted).  A plaintiff can meet the burden to show pretext in either of two ways: (1) "by showing that the proffered reason is factually false," *Tabor*, 703 F.3d at 1218; or (2) "by showing the defendant's proffered non-discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude [they are] unworthy of belief," *Conroy v.*

*Vilsack*, 707 F.3d 1163, 1172 (10th Cir. 2013) (alteration in original) (internal quotation marks omitted).

   b. *Analysis*

   On appeal, the City does not contest that Ms. Freppon established a prima facie case of pregnancy discrimination related to the denial of a light duty assignment and placement on unpaid FMLA leave. At the second step of the *McDonnell Douglas* framework, Ms. Freppon testified at her deposition that Chief Mattheyer proffered a legitimate non-discriminatory reason for these actions during his conversation with her on October 18, 2010, namely that "there was no light duty available."[6] Aplt. App. at 77 (Depo. Page 52). Further, when Ms. Freppon asked Chief Mattheyer why two male police officers had received light duty in the past, he said it was because they had suffered on-the-job injuries. *Id.* We thus conclude that a jury could reasonably infer from Chief Mattheyer's response that Ms. Freppon was denied a light duty assignment because her condition did not result from an on-the-job injury.

---

   [6] We note that Ms. Freppon did not depose Chief Mattheyer or any other employee of the City, and the City did not proffer affidavits from any of its employees in support of its motion for summary judgment. Consequently, Ms. Freppon's deposition testimony is the sole source of information concerning the City's proffered reason for denying her light work and forcing her to take FMLA leave.

Moving to the third step of the *McDonnell Douglas* framework, we agree with the district court that Ms. Freppon failed to put forth sufficient evidence to show that the reasons proffered by Chief Mattheyer were pretextual. To begin with, because Ms. Freppon's condition did not result from an on-the-job injury, she was not similarly situated to the two male police officers who were accommodated with light duty assignments. As a result, the evidence concerning the other officers is insufficient to establish pretext or disparate treatment. *See Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1196-97 (10th Cir. 2011) (concluding that plaintiff failed to support a finding of pretext where he produced no evidence that similarly situated employees were treated differently); *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) ("To show disparate treatment, [plaintiff] must establish she was similarly situated to [the other employee] in all relevant respects.").

Ms. Freppon argues that a jury could find that one of the police officers who received a light duty assignment was not actually injured on-the-job. She testified at her deposition that his injury occurred when he was walking from his house to his patrol car to go on duty. But Ms. Freppon stated during her deposition that this was simply her "understanding" of how the officer was injured, s*ee* Aplt. App. at 222-23, and she has not shown that she has personal knowledge concerning what happened. Further, in the summary judgment proceedings before the district court, Ms. Freppon failed to put forth any evidence to support her deposition testimony on this point.

Thus, her testimony lacked an evidentiary basis and was insufficient to support a finding of pretext.

Ms. Freppon also testified at her deposition that the City gave modified duties to two male employees who were not police officers after they sustained non-work related injuries. According to Ms. Freppon, the two employees who received modified duty assignments were Todd Johnson, a paramedic with the fire department, and Russell Holland, a code enforcement officer. However, we agree with the district court that Ms. Freppon failed to put forth sufficient evidence to show that she was similarly situated to these employees. In fact, in her summary judgment response brief, Ms. Freppon failed even to address the similarly situated issue, and she apparently conducted no fact discovery concerning the question. Consequently, although Ms. Freppon addresses the issue in her opening brief in this appeal, she failed to preserve her arguments in the proceedings before the district court, and the arguments were therefore waived. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009) ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal."). Moreover, Ms. Freppon's appellate arguments concerning Mr. Johnson and Mr. Holland and the similarly situated issue are conclusory and unpersuasive.

Next, we agree with the district court that Ms. Freppon's "reliance on Sections 5.6 and 5.10 of the [City's] Personnel Manual is . . . misplaced. Neither section provides an employee with the right to light duty work . . . ." Aplt. App. at 354.

We also conclude that the district court correctly determined that "the remarks and behavior of Lt. Simon [in denying Ms. Freppon's request to go to the Police Department's firing range and yelling at her and using obscenities on another occasion], while perhaps inappropriate, are insufficient to support [her] disparate treatment claim." *Id.* Most importantly, as the district court found, "[Ms. Freppon] did not offer evidence of any link between Simon and the City's refusal to allow [her] to have a modified work assignment." *Id.*

Finally, we note that after Chief Mattheyer denied Ms. Freppon's request for a light duty assignment, the City proffered an additional reason to justify its denial of her request. As set forth above, the additional reason proffered in a letter from the City's attorney dated November 19, 2010, was that the City had decided to discontinue its prior policy of allowing light work for police officers who were injured on-the-job, thus eliminating the availability of light work for all police officers regardless of whether an officer had sustained a work-related or non-work-related injury. *See* Aplt. App. at 161. According to Ms. Freppon, this alleged policy change was a post hoc rationalization by the City indicative of pretext. But the general rule in this circuit is that Ms. Freppon must put forth evidence showing that each of the City's proffered reasons is pretextual. *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1309-10 (10th Cir. 2005) (per curiam). As explained above, we agree with the district court that Ms. Freppon presented insufficient evidence to show that the initial reasons proffered by Chief Mattheyer

were pretextual, and Ms. Freppon has not argued that she meets any of the exceptions to the general rule set forth in *Jaramillo*. *See id.* at 1310 (discussing five exceptions to general rule that an employee must proffer evidence showing that each of the employer's justifications were pretextual).

But even leaving aside the general rule, Ms. Freppon's pretext arguments related to the November 19, 2010, letter are without merit. Simply put, she was not entitled to a light duty assignment either for the reasons proffered by Chief Mattheyer or for the reasons proffered by the City's attorney in the November 2010 letter. Therefore, we do not see any inconsistencies or contradictions from which a jury could infer that the alleged policy change was unworthy of belief and thus a pretext for discrimination.

Accordingly, we must affirm the grant of summary judgment as to Ms. Freppon's pregnancy discrimination claim for the denial of light work and forced FMLA leave.

2. ***Retaliation Claim***

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable person would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006). An action is materially adverse if it "might have dissuaded a

reasonable worker from making or supporting a charge of discrimination." *Id.* at 1202 n.2 (internal quotation marks omitted).

In both her complaint and her response to the City's motion for summary judgment, Ms. Freppon limited her Title VII retaliation claim to the City's actions of denying her access to the gun range on one occasion and forcing her to take unpaid FMLA leave. *See* Aplt. App. at 10, 193-96. The district court concluded that neither of these actions was materially adverse, and that the second element of Ms. Freppon's prima facie case therefore failed. *See* Aplt. App. at 357-59. Although we agree with this conclusion as it pertains to the denial of access to the gun range on one occasion, the City's conduct in forcing Ms. Freppon to take twelve weeks of unpaid FMLA leave is an action that a reasonable person would find to be materially adverse. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 73 (2006) (holding that "the jury's conclusion that the 37-day suspension without pay was materially adverse was a reasonable one").

Nonetheless, because Ms. Freppon failed in her opening brief to challenge the district court's rulings regarding the second element of her prima facie case, we affirm the entry of summary judgment in favor of the City on Ms. Freppon's retaliation claim. *See LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 n.10 (10th Cir. 2004) (concluding that appellant waived its right to appeal rulings of district court that it did not substantively address in its opening brief); *Adler v.*

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

### III.  **CONCLUSION**

We (1) remand Ms. Freppon's termination claim to the district court with instructions to dismiss the claim for lack of subject matter jurisdiction, (2) affirm the grant of summary judgment as to Ms. Freppon's pregnancy discrimination claim for the denial of light work and forced FMLA leave, and (3) affirm the grant of summary judgment as to Ms. Freppon's retaliation claim.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge